IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA MANNINA, ) | |
| ) | |
| v.  ) | Civil Case No. 15-931 (KBJ) |
| ) | |
| HON. MURIEL BOWSER, *et al.*  ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff's Amended Complaint states a cognizable, factually sufficient and facially plausible claim under 42 U.S.C. § 1983 that precludes dismissal.  By naming and serving the officials ultimately responsible for the negligent acts of the District of Columbia, the District has notice of Plaintiff's claims, through service of its agents, and is legally and effectively a party to this action.  Defendants' argument is without merit.  If Courts routinely dismiss official capacity defendants in lawsuits against the District of Columbia as being redundant, as Defendants claim, then naming just the official capacity defendants must be equivalent to naming the District of Columbia.  The District of Columbia, through proper service of process of its official capacity defendants and by service of its Attorney General, has knowledge of, was properly served and is already a defendant in this action.  No further action is required to join the District of Columbia.

Respectfully submitted,

/s/ *John Bickerman*

JOHN BICKERMAN
DC Bar No. 423059
Bickerman Dispute Resolution, PLLC
The Willard
1455 Pennsylvania, NW, Suite 400
Washington, DC  20004-0017
jbickerman@bickerman.com
202-289-0400
*Counsel for Plaintiff*

IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA MANNINA, ) | |
| ) | |
| v. ) | |
| ) | |
| HON. MURIEL BOWSER, *et al.* ) | Civil Case No. 15-931 (KBJ) |
| ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## Table of Contents

I.   Facts ........................................................................................................................... 2

II.  Standard of Review .................................................................................................... 5

III. Argument .................................................................................................................... 6

   A.   Plaintiff Has Alleged a Cognizable Claim Under 42 U.S.C. § 1983 Because Her Complaint is Factually Sufficient and States a Plausible Claim for Relief ................................................................. 6

      1.  The Complaint Neither Asserts Merely Conclusory Allegations Nor Relies on a Theory of Supervisory Responsibility. ........................................................................................ 6

      2.  A § 1983 Defendant Must Have a Subjective Mental Intent that Is Deliberately Indifferent to a Condition that Poses a Risk of Serious Harm ........................................................ 10

   B.   By Naming District of Columbia Officials in their Official Capacity, the District of Columbia Has Been Properly Joined and Served with Plaintiff's Complaint. ................................ 12

   C.   The Court Should Exercise Pendent Jurisdiction Over the State Law Claims ....................... 14

IV.  CONCLUSION ........................................................................................................ 15

## Table of Authorities

*Ashcroft v. Iqbal,* 556 U.S. 662 ................................................................................. 5, 6

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 662 (2007) ................................................. 5, 6

*Direct Supply v. Specialty Hosp. of America,* 878 F.Supp.2d 13, (D.D.C. 2012) ....... 12

*Farmer v. Brennan,* 511 U.S. 825 (1994) ................................................................. 10, 11

*Hardy v. District of Columbia*, 601 F. Supp. 2d 182 (D.D.C. 2009) ............................ 13

*Hazel v. Lappin*, 614 F. Supp. 2d 66 (D.D.C. 2009) .................................................... 13

*Holmes-Ramsey v. District of Columbia*, 747 F. Supp. 2d 32 (D.D.C. 2010) .............. 13

*Jefferies v. Dist. of Columbia,* 11-cv-1159, 2013 WL 66085 (D.D.C. Jan. 7, 2013) ..... 12

*Johnson v. Dist. of Columbia*, 572 F. Supp. 2d 94 (D.D.C. 2008) ............................... 13

*Kassem v. Wash Hosp. Ctr,* 513 F.3d 251 (D.C. Cir. 2008) ........................................... 5

*Stewart v. Nat'l Educ. Ass'n,* 471 F.3d (D.C. Cir. 2006) ............................................... 5

*Taylor v. Barkes,* 135 S.Ct. 2042, 575 U.S. ___ (2015)(*per curiam*) ............................ 8

*Trimble v. Dist. of Columbia*, 779 F. Supp. 2d 54 (D.D.C. 2011) ........................... 12, 13

*Wilson v. Seiter*, 501 U.S. 294 (1991) .......................................................................... 10

Plaintiff filed her Amended Complaint on August 13, 2015.  The first count of the Amended Complaint asserts a claim under federal law for the violation of her husband's, Paul Mannina's (deceased), Fifth Amendment civil rights at the hands of Department of Corrections ("DoC"), 42 U.S.C. § 1983, and names Thomas Faust, the DoC's Director, in his individual capacity, as the person responsible for failing to protect the decedent.  Counts II and III assert pendent state law claims arising from the same common nucleus of operative facts as the federal claim.  In their Motion to Dismiss, under Fed. R. Civ. P 12(b)(6) and (7), Defendants assert that the Court should dismiss Plaintiff's § 1983 claim for failing to state a claim and for failure to name the District of Columbia as a necessary party.

Plaintiff's Amended Complaint states a cognizable, factually sufficient and facially plausible claim under 42 U.S.C. § 1983 that precludes dismissal.  By naming and serving the officials ultimately responsible for the negligent acts of the District of Columbia, the District has notice of Plaintiff's claims, through service of its agents, and is legally and effectively a party to this action.  Defendants' argument is without merit.  If Courts routinely dismiss official capacity defendants in lawsuits against the District of Columbia as being redundant, as Defendants claim, then naming just the official capacity defendants must be equivalent to naming the District of Columbia.  The District of Columbia, through proper service of process of its official capacity defendants and by service of its Attorney General, has knowledge of, was properly served and is already a defendant in this action.  No further action is required to join the District of Columbia.

The Court should deny Defendants' Motion to Dismiss.

I.      Facts

On June 5, 2013, the Decedent met his supervisor from his workplace, Leslie Perlman, at her home on Chesapeake Street, NW in Washington, DC.  He had known Ms. Perlman for more than two decades and upon information and belief had an intimate personal relationship with her outside of work.  Compl. ¶ 12.  An altercation ensued, resulting in injuries to Ms. Perlman that required medical treatment and ultimately surgery to repair broken facial bones.  Compl. ¶ 13.  Mr. Mannina returned home after the meeting with Ms. Perlman.  Despondent over his situation, he did not go to work on June 6th and that night attempted suicide by consuming a combination of drugs and alcohol.  Compl. ¶ 14.  The next morning, June 7th, Ms. Mannina could not wake her husband and called for an ambulance.  He was admitted to Montgomery General Hospital for a "changed mental state" according to the nurse on the unit where Mr. Mannina was a patient.  High levels of alcohol, opiates and Tylenol were found in his system and he was unresponsive.  Compl. ¶ 15.

At first, Ms. Perlman declined to name the decedent as her assailant.  Then, on or about Friday, June 7th, Ms. Perlman changed her story and told District of Columbia Metropolitan Police Detectives that Mr. Mannina was the person who injured her.  In the course of subsequent interviews with the D.C. police detectives, Ms. Perlman reported that upon leaving her home, Mr. Mannina declared, "I guess I'll just blow my brains out."  This statement was repeated in the Court's preventive detention hearing on June 17, 2013.  Compl. ¶ 16.

The police arrested Mr. Mannina sometime after 2 pm on Friday, June 7th, while he was still a patient at Montgomery General Hospital.  He was still receiving treatment for his attempted suicide. He was non-responsive and despondent as a result of his situation and the drug and alcohol overdose.  He remained in the hospital for two more days after his arrest.  The

police barred his family from seeing him.  He was most certainly alone and scared in his hospital room under 24-hour police guard.  Compl. ¶ 17.  On or about Sunday, June 9th, Mr. Mannina was transferred from the hospital to a Montgomery County Jail on Seven Locks Road.  He was subsequently extradited to the District of Columbia.  Compl. ¶ 18.

On June 17, 2013, the Superior Court of the District of Columbia held a preventive detention hearing.  Mr. Mannina's counsel urged the Court to release Mr. Mannina so that he could receive needed mental health treatment.  During the hearing, the Court observed the Mr. Mannina had "obviously experienced some sort of imbalance at this time" and "[Mr. Mannina] sounds like someone who had everything to lose."  "Obviously, Mr. Mannina's a wonderful person in most respects; but based on the evidence, there is something dark floating out there."  Despite recognizing Mr. Mannina's fragile mental condition, but also concerned for the safety of the complainant, the Court refused to release Mr. Mannina back to the community.  Mr. Mannina, depressed and despondent, was returned to the D. C. Jail, without having had an opportunity to speak to his family or his attorney.  It was the last time he saw either of them.  Compl. ¶¶ 18-19.

Had there been the most minimal level of communication with the DoC, the DoC should have had ample warning that Mr. Mannina was very likely suicidal.  Some of the facts that should have been known to DoC were:

- The Metropolitan Police detective's report that Mr. Mannina had declared an intent to kill himself upon leaving the premises of the complainant;
- A nurse on Mr. Mannina's unit advising the detective that the decedent had been admitted to the hospital for a "changed mental state;" after an overdose of drugs and alcohol, again indicating suicidal tendencies; and,

3

- The Court observing what everyone could see – that a gentle, kind man had "experienced some sort of imbalance,"

Nonetheless, the policies and practices overseen and implemented by Defendant Faust fail to segregate potentially suicidal inmates and placing them on a suicide watch.  Had they done what is common prison practice, Mr. Mannina would be alive today.   Moreover, the DoC, under the direction of Director Faust, adopted a policy of indiscriminately giving prisoners razor blades by which they can harm themselves.  Incredibly, the DoC gave Mr. Mannina, whose mental condition had been noticeably deteriorating to the point where suicide was foreseeable, the razor that he subsequently used to kill himself, just hours after returning to his cell.  Compl. ¶¶ 21-22.

Paul Mannina killed himself in the early morning hours of June 18, 2013, alone and desperate, his life in total tatters.  He knew he was at risk of losing his job, his license to practice law, his standing in the community and quite possibly his marriage.  Compl. ¶ 22.

Mr. Mannina was incarcerated under conditions that posed a substantial risk of serious harm and Defendant Faust was responsible for creating the conditions that exposed Mr. Mannina to that harm that ultimately led to his death.  After Mr. Mannina's suicide and the suicide of two other inmates at the D.C. Jail in 2013, Defendant Faust commissioned a study of the conditions at the D.C. Jail to examine the obvious deficiencies in policies and practices that he had overseen and implemented that led to their deaths.  Subsequent to Mr. Mannina's death, upon information and belief as a result of his death, the DoC changed its policies of dispensing razor blades to inmates.  Director Faust recognized that his policies regarding razor blades were sufficiently serious to be discontinued because they failed to protect the detainees that he was charged with housing.  Compl. ¶¶ 23-24.

4

In the year that he died, there were four suicides at the D.C. Jail and the suicide rate for inmates at the D.C. jail was three times the national average. Compl. ¶ 24. Director Faust must have been aware of the serious and uncorrected problems of detainees at the D.C. Jail committing suicide that his policies failed to prevent.

## II. Standard of Review

In deciding a 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor," "accept[ing] as true all of the factual allegations contained in the complaint," *Kassem v. Wash. Hosp. Ctr.,* 513 F.3d 251, 253 (D.C.Cir. 2008), "with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n,* 471 F.3d 169, 173 (D.C.Cir. 2006). *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) establish a two-prong test for determining the sufficiency of pleadings under the Federal Rules. To survive a motion to dismiss a complaint must "contain sufficient factual content accepted as true, . . . [and] 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. 1947, 1949; *Twombly,* 550 U.S. 544, 570. Legal conclusions and threadbare allegations do not satisfy the first prong of the requirement of Rule 8. *Id.* The second prong requires that the claim, assuming all facts pled as true, allege a claim for which relief is not necessarily probable, but instead, plausible. *Id,* at 129 S.Ct. at 1950. The determination of plausibility is a "context-specific" task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Fairness dictates that the level of specificity be related to the ability of the defendant to be on notice of the facts that give rise to a plaintiff's claims and the ability of the plaintiff to acquire the facts necessary to prove her claim. Where the plaintiff is in possession of all of the facts and circumstances constituting the claim, the Court should expect greater particularity and factual

detail in the allegations in the complaint, which explains why the Federal Rules require a heightened pleading standard for fraud or mistake.  *See* Fed. R. Civ. P. 9(b).  In contrast, where many facts are tightly held in the closed environment of a prison, the Court should call upon its experience and common sense to consider the availability of information for the plaintiff at the time of pleading.  Notwithstanding the inquiry a court should undertake, the facts alleged in the Complaint are not conclusory.  They establish a course of conduct and established policies that were not adhered to that both give notice to the Defendant Faust of the basis for the claim and demonstrate that the claim is facially plausible.

### III.     Argument

#### A.     Plaintiff Has Alleged a Cognizable Claim Under 42 U.S.C. § 1983 Because Her Complaint is Factually Sufficient and States a Plausible Claim for Relief

##### 1.     The Complaint Neither Asserts Merely Conclusory Allegations Nor Relies on a Theory of Supervisory Responsibility.

The Complaint is "plausible on its face," *Ashcroft v. Iqbal,* 566 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and provides specific factual examples of policies and procedures that are causally connected to the death of Paul Mannina.  The §1983 claim does not rely upon vicarious liability of Defendant Faust, as Defendants suggest.  Instead, it rests on his acts and omissions as the Director of DoC for personally setting and carrying out policies that by their very nature posed a serious risk of harm.  And, in this case, led to the death of Paul Mannina.

First, the DoC policy allowed the indiscriminate distribution of razor blades to all detainees in the general population.  Amended Complaint, ¶¶ 1, 2, 8, 22, 26, 29 & 35. (Discovery may uncover that this policy may have also included those under observation as

6

potential suicide risks.) Paul Mannina used the razor blade he received from the DoC to slit his throat hours after returning from his detention hearing. Upon information and belief, the DoC changed its policy after Mr. Mannina's death, thereby recognizing the danger of its policy to the health and safety of its detainees. Amended Complaint, ¶ 24.

Second, the DoC has a duty to communicate adequately with the police, prosecutors and officers of the court for the purpose of identifying detainees that could pose a substantial risk of suicide. Complaint, ¶ 20. This is not a conclusory statement. The obligation to communicate is a specific policy that was specifically cited by the consultant hired by Defendant Faust as a deficiency that contributed to the risk of suicide at the D.C. Jail.

Third, the D.C. Jail had only nine cells that were "suicide resistant" for a population of 1,739 inmates. The miniscule number of cells available to protect suicide candidates arguably created pressure on DoC personnel to ignore detainees like Mr. Mannina that posed a risk to themselves because there was no safe place to house them at the D.C. Jail. Complaint, ¶ 32.

Fourth, there had been multiple suicides in the sixth months prior to Mr. Mannina's death that is strong circumstantial evidence that Defendant Faust knew that his D.C. Jail presented a serious and unacceptable risk to the safety of its detainees. What he did and didn't do to ameliorate that risk is at the crux of this case and Plaintiff should be entitled to take discovery to find out what Defendant Faust knew and what actions he took prior to Mr. Mannina's death. Complaint, ¶¶ 31-32.

Fifth, subsequent to Mr. Mannina's suicide, Defendant Faust convened a task force and hired a consultant to review the policies and procedures of the D.C. Jail. Hayes, Lindsay, *Report on the Suicide Prevention Practices within the District of Columbia, Department of Corrections Central Detention Facility,* Washington, DC (September 13, 2013)(hereafter "Report"). (A true

7

and correct copy of the report is attached.)[1] The findings of the consultant's report are instructive of a total breakdown in the implementation of policies designed to protect the safety of detainees. The study made the following findings. Complaint, ¶ 24.

- DoC personnel had inadequate training. Although the DoC policies required all employees to receive pre-service training of 40 hours, including *8 hours devoted exclusively to suicide prevention*, the reality was far different. In practice, all that DoC employees are shown is a 39-slide PowerPoint presentation and they *received an hour or less of suicide prevention training*. The consultant concluded that because most suicide attempts occur in the general population, *all employees* need even more training than what the policy requires. The failure to provide even the minimum amount of training required by the DoC policy may plausibly be a consequence of Defendant Faust's failure to do his job and a cause of why Pual Mannina was able to slit his throat in his cell unobserved and unprotected by employees of DoC who never had the proper training to know what to do. Report pp. 7-12.

- The weak to non-existent lines of communication between the court, the arresting-transporting officer and the DoC Jail staff may be a significant contributing factor

---

[1] In *Taylor v. Barkes,* 135 S.Ct. 2042, 575 U.S. ___ (June 2015)(*per curiam*), the Supreme Court held that suicide screening and prevention measures at the time of intake had never been established as a Constitutional right under the Eighth Amendment such that defendants would have been aware that they were violating the Constitution. Consequently, defendants in that case were entitled to qualified immunity and could not be assessed liability under §1983. However, *Taylor* is distinguishable. Plaintiff is not asserting that the screening process for identifying her husband as a suicide risk is the basis for her claim. Instead, she alleges that Defendant Faust had a Constitutional duty to provide safe housing and not give detainees the implements with which they can kill themselves. It would be error to extend the holding in *Taylor* to cover all manner of behavior by prison officials that would induce inmates to hurt themselves or fail to protect inmates from themselves. Screening is a very narrow subset of prison functions and is necessarily very difficult and imprecise. It is reasonable to grant qualified immunity in those circumstances but not all other situations where an inmate commits suicide. It is unreasonable to extend the *per curiam* holding of *Taylor* in such a manner so as to insulate prison officials from all conduct that could exacerbate the likelihood of suicides. Moreover, detainees, like Mr. Mannina, are under the total control of the DoC and had never been convicted of a crime. They deserved better treatment than they received.

to protecting the safety of detainees. DoC needs to have a routinized policy of collecting relevant information from individuals who have knowledge about the mental condition of inmates. Report pp. 20-21. This is not a mere supervisory issue. In the instant case, anyone that attended Mr. Mannina's court hearing or transported him would certainly have had information to know that he was a substantial suicide risk and should have been afforded greater protection. This information should have been communicated to DoC. This is not a matter of screening either. There were clearly enunciated statements about the mental condition of Mr. Mannina that were never communicated to DoC, which had they been shared, would have likely spared his life. No screening would have been necessary. Defendant Faust is responsible for setting the policies and practices that the DoC employees are obliged to follow. What he knew about the communication lapses with his employees is a relevant line of inquiry about his subjective state of mind and has been properly pled in the Complaint. Complaint, ¶ 20.

- Inadequate number of suicide resistant cells created an unsafe environment. There were only nine suicide resistant cells for a population of over 1,700. Report at 23. Furthermore, because of overcrowding the mental health unit was used for general housing. Report at 28; Complaint, ¶ 32. Obviously, if there aren't enough cells for inmates that pose a suicide risk, then the risk of harm and serious injury to the entire population rises to potentially unacceptable levels. Defendant Faust must have been aware of the inadequate housing conditions for suicide

risks. What he did in response is a proper line of inquiry to establish his mental intent and has been properly alleged in the Complaint.

### 2. A § 1983 Defendant Must Have a Subjective Mental Intent that Is Deliberately Indifferent to a Condition that Poses a Risk of Serious Harm

In *Farmer v. Brennan,* 511 U.S. 825 (1994), the Supreme Court reiterated its two-part test to determine whether a prisoner has suffered a Constitutional violation.[2] First, the deprivation alleged must be objectively sufficiently serious. 511 U.S. 825, 834, citing, *Wilson v. Seiter*, 501 U.S. 294 (1991). A litigant must allege that he has been incarcerated under conditions that pose a serious risk of harm. *Id.*

The Plaintiff easily meets the pleading requirements of the first prong of the test. There can be no more serious deprivation of one's right than the loss of one's life. Furthermore, the Complaint alleges that the loss of life was causally connected to the conditions at the D.C. Jail that posed a serious risk of harm that Defendant Faust recklessly ignored. That risk of harm of suicide was visited not just on the Plaintiff's husband but also on three other inmates in the same calendar year. Plaintiff has given adequate notice that she intends to prove the conditions that were allowed to exist by acts of commission and omission by Defendant Faust posed a serious

---

[2] *Farmer v. Baker*, considers a claim brought under the Eighth Amendment prohibition against cruel and unusual punishment. In *Farmer,* the plaintiff had been convicted and incarcerated. Because the decedent was never convicted of a crime and was just being detained at the D.C. Jail while awaiting trial, his claim more properly arises under the Fifth Amendment Due Process protection. Indeed, because Mr. Mannina was presumed innocent, a heightened level of protection from harm should be assumed. For the purpose of analyses, the argument cites the law that has evolved under the Eighth Amendment.

risk of harm and has cited specific examples of the policies and procedures that led to her husband's avoidable death.

In the second prong of the test, the Supreme Court explained the meaning of deliberate indifference. In prison cases, an official "must have a 'sufficiently culpable state of mind' and that state of mind is one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. 825, 834, quoting *Wilson, supra.* Deliberate indifference lies somewhere on the continuum between negligence and purpose or knowledge, which has sometimes been equated with recklessness. *Id.* To satisfy a finding of deliberate indifference, a plaintiff must meet a *subjective* requirement regarding what the prison official mental attitude actually was with respect to preventing a serious harm and to protecting the health and safety of detainees rather than applying an objective standard of what it *should have been*. 511 U.S. at 839 (citations omitted).

The subjective standard addresses the knowledge of the risk of harm not to whether the harm would befall a particular inmate. 511 U.S. at 842. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* Moreover, circumstantial evidence can be used to demonstrate that the prison official had the requisite knowledge to be held to have acted with deliberate indifference and be held liable for a Constitutional violation. *Id.* Circumstantial evidence may so strong that it is obvious that the defendant must have had knowledge of the risk at the time of the injury.

Applying the second prong of the Supreme Court's test, the Complaint is clearly sufficient. It is not necessary to allege that Defendant Faust was acquainted with Mr. Mannina prior to his suicide. What is necessary and has been more than adequately alleged is that Defendant Faust implemented policies that indiscriminately put fragile prisoners at an

11

unnecessary and unlawful risk of harm.  Furthermore, the allegations asserting circumstantial facts, if proven, would also lead to the inference that Defendant Faust had the requisite knowledge to be adjudged to be deliberately indifferent.

Most importantly, having pled specific factual examples of policies and procedures that led to the intolerably unsafe conditions, and, because the standard for assessing the Defendant's state of mind is subjective, dismissal prior to discovery would be in error.  Plaintiff is entitled to engage in adequate discovery to determine the state of mind of Defendant Faust at the time of Mr. Mannina's suicide.

As the foregoing discussion demonstrates, the allegations are neither factually threadbare nor are they facially implausible.  They give Defendant Faust ample notice of the actions and inactions he undertook or failed to undertake that to caused Mr. Manina's death and led to the Constitutional claim asserted in the Complaint.  They state a colorable claim and defy dismissal at this point in the litigation.  Moreover, because the law requires an inquiry into the *subjective* mental intent of Defendant Faust, discovery is necessary and dismissal would be entirely premature.

**B.     By Naming District of Columbia Officials in their Official Capacity, the District of Columbia Has Been Properly Joined and Served with Plaintiff's Complaint.**

"Courts are generally reluctant to grant 12(b)(7) motions;" *Direct Supply v. Specialty Hosp. of America,* 878 F.Supp.2d 13,  (D.D.C. 2012).  Defendants' Initial Memorandum (Aug. 3, 2015) establishes the very grounds for dismissing Defendants' argument.  As Defendants acknowledge in their footnote 1 in their initial Motion to Dismiss, naming officials of the District of Columbia in their official capacity is duplicative of naming the District of Columbia itself as

12

an entity.[3] Since the District has been properly joined through naming and serving the Mayor and the Director of the Department of Corrections in their official capacity and serving the District's Attorney General, they have timely received notice of Plaintiff's Complaint and no further action to join the District of Columbia is required.

"Plaintiffs claims against officials in their official capacities are effectively claims against the District of Columbia." *Holmes-Ramsey v. District of Columbia*, 747 F. Supp. 2d 32, 42 (D.D.C. 2010)(citations omitted). By way of further example, in *Trimble v. District of Columbia, et al.,* 779 F.Supp.2d 54 (D.D.C. 2011), the Court, after recognizing that it is duplicative to name both the government entity and its employees, observed that "[b]ecause Trimble has sued the District of Columbia itself, her claims against the individual defendants in their official capacities are redundant." 779 F.Supp.2d at 58, n. 3. The obvious implication is that if Trimble *had not sued the District*, then naming the individuals in their official capacity would have been *sufficient* to implicate the District as a party. Consequently, there is no reasonable basis to argue that the District of Columbia has not been joined in this litigation by the naming of the Defendants in their official capacities.

---

[3] The footnote that appeared in the Defendants' first motion to dismiss that betrays their argument for joinder of the District of Columbia reads as follows:

Indeed, official capacity defendants are generally dismissed from lawsuits against the District as official capacity claims are deemed to be redundant. *See e.g.*, *Jefferies v. Dist. of Columbia,* 11-cv-1159, 2013 WL 66085 (D.D.C. Jan. 7, 2013) (dismissing claims against Chief of Police as redundant where District has also been named); *Day v. District of Columbia*, 10-cv-2250 ESH, 2012 U.S. Dist. LEXIS 18213, at *96-97 (D.D.C. Feb. 14, 2012) (dismissing official capacity claims for equitable relief and damages as redundant of claims against the District "for reasons of judicial economy and lack of prejudice"); *Trimble v. Dist. of Columbia*, 779 F. Supp. 2d 54, 58 n. 3 (D.D.C. 2011) (Roberts, J.) (dismissing claims against a District officials "[b]ased upon the understanding that it is duplicative to name both a government entity and the entity's employees"); *Holmes-Ramsey v. District of Columbia*, 747 F. Supp. 2d 32, 42 (D.D.C. 2010) (finding "no reason to deviate" from the "norm" and dismissing claims against the Mayor and District official as duplicative of claims against the District); *Hazel v. Lappin*, 614 F. Supp. 2d 66, 69 (D.D.C. 2009) (summarily dismissing Federal officials sued in their official capacities and treating plaintiffs' *Bivens* action "as if it were brought against the federal government directly"); *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 186-87 (D.D.C. 2009) (Roberts, J.) ("Because plaintiffs [made] the same claims against the District of Columbia, the same claims against [former District officials] in their official capacities [were] redundant and . . . dismissed"); *see also Price*, 545 F. Supp. 2d at 94 (collecting cases). *But see Johnson v. Dist. of Columbia*, 572 F. Supp. 2d 94, 112 (D.D.C. 2008) (denying a motion to remove Mayor as a named defendant, noting that such removal is permissible but not required), *amended on reconsideration in part* 632 F. Supp. 2d 20 (D.D.C. 2009).

The liberal pleading standards of Rule 8 require that the defendants be given a short and clear statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Naming and serving the Mayor, the Attorney General of the District of Columbia and the Director of the Corrections in their official capacities gave the District of Columbia government sufficient notice of the claim and an opportunity to defend itself. That is all that is required. Obviously, as other courts have observed, the party liable for damages would be the District, which is on notice of the action. Naming District officials in their official capacity is tantamount to naming the District government. The Court should deny the District's motion to dismiss counts II and III.

### C. The Court Should Exercise Pendent Jurisdiction Over the State Law Claims

For the reasons stated herein, the Court properly has jurisdiction over Plaintiff's § 1983 claim and, consequently, pendent jurisdiction would be appropriate. Because Defendants' Motion to Dismiss should be dismissed and Plaintiff should be entitled to take discovery into the subjective mental intent of Defendant Faust, judicial economy favors retaining the state law claims. Indeed, because the Complaint alleges sufficient circumstantial facts that give rise to conclusion that Defendant Faust must have known about certain conditions existing at the D.C. Jail at the time of Paul Mannina's suicide, it is more than likely that a jury will ultimately be required to determine Defendant Faust's liability. Furthermore, the same nucleus of facts that support the Plaintiff's § 1983 claims also demonstrate the negligence on the part of the District of Columbia in protecting Mr. Mannina while he was in the District's custody.

Most importantly, absent the Court asserting pendent jurisdiction, Plaintiff will be irreparably prejudiced. The statute of limitations on the state law claims for wrongful death has run as of June 17, 2015. If the Court dismisses the state law claims, Plaintiff will be without legal recourse to a remedy.

## IV.     CONCLUSION

Plaintiff has made factually sufficient allegations that are facially plausible. Consequently, the Complaint states a colorable § 1983 claim under the Fifth Amendment. Moreover, because the standard for assessing the deliberate indifference of Defendant Faust is subjective, discovery is required and dismissal would be premature.  Finally, the Complaint names District officials in their official capacity and it would be redundant and unnecessary to name the District of Columbia, too.  The District is already a party to the action.  For all of these reasons, Defendants' Motion to Dismiss should be denied, in its entirety.

Respectfully submitted,

/s/ *John Bickerman*

JOHN BICKERMAN
DC Bar No. 423059

Bickerman Dispute Resolution, PLLC
1455 Pennsylvania, NW, Suite 400
Washington, DC  20004-0017
jbickerman@bickerman.com
202-289-0400

*Counsel for Plaintiff*

IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTORIA MANNINA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HON. MURIEL BOWSER, *et al.* | ) | Civil Case No. 15-931 (KBJ) |
| | ) | |
| | ) | |

**ORDER**

Upon consideration of Plaintiff's Amended Complaint, Defendants' Second Motion to Dismiss, their memorandum in support, Plaintiff's Second Opposition and memorandum in support thereto, Defendants' Reply, if any, and for good cause shown, it is hereby,

ORDERED that Defendants' Second Motion to Dismiss is DENIED.

_____
Hon. Ketanji Brown Jackson
United States District Court Judge

Date: