IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTORIA MANNINA, | ) | |
| | ) | Case No.: 1:15-cv-0931 (KBJ) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT DISCOVERY REPORT

In response to the Court's Minute Order of November 8, 2017, Plaintiff Victoria Mannina

and Defendant District of Columbia (the "District") respectfully submit this Joint Discovery

Report.

## PRELIMINARY STATEMENT

PLAINTIFF'S STATEMENT: This case is about the death of Paul Mannina. Shortly

after being arrested in June 2013 for an alleged violent crime of notoriety, Mr. Mannina died

while in the custody of the District of Columbia Department of Corrections ("DOC") at its

Central Detention Facility ("D.C. Jail").

In this lawsuit, Plaintiff asserts the District had clear, specific knowledge of Mr.

Mannina's suicidal tendencies and a near-fatal suicide attempt.  He was arrested at the direction

of the Metropolitan Police Department ("MPD") while in the hospital recovering from an

attempted suicide by ingesting a multi-substance cocktail of drugs and alcohol, and in the

investigation of Mr. Mannina's alleged crime MPD was informed that immediately following the

altercation for which he was being investigated, Mr. Mannina threatened to kill himself.  Thus,

the District had clear knowledge from multiple sources that Mr. Mannina was actively suicidal,

in crisis, and in need of preventative care.  Tragically, and in spite of this knowledge, the District

allowed Mr. Mannina access to a razor.  On June 18, 2013, hours after returning from a court

hearing in which he was denied his pretrial release, he used a razor provided by his jailers to end

his life.

As more particularly alleged in Plaintiff's Second Amended Complaint [ECF 33], Mr.

Mannina's Pretrial Services report twice stated that he had thoughts about harming himself.

According to the District, this information was unknown to the DOC.

Discovery to date shows that the District and the DOC turned a blind eye to the

substantial risks of serious harm or death that detainees in crisis like Mr. Mannina faced. Instead,

it relied on a cursory mental health evaluation provided by inadequately trained personnel, which

Plaintiff claims was both negligent and unconstitutional, and was overseen by prison staff who

were similarly untrained. For example, the personnel conducting Mr. Mannina's mental health

screening were not even informed of the charges against him; facts which are crucial in suicide

prevention (indeed, *all four* of the inmates who committed suicide at D.C. Jail in 2012-13 were

charged with sex crimes like Mr. Mannina).

In addition to the District's callous convention of failing to provide prisoners with due

care, Plaintiff asserts that the District further violated Mr. Mannina's constitutional rights by

purposefully granting or knowingly facilitating uncontrolled and unrecorded access to razors;

discovery produced at the end of the prior discovery period substantiated that, notwithstanding a

mandatory Post Order requiring permanent logs of all razors, DOC guards did not properly log

distribution of razors, and simply destroyed razor records on a daily basis. Plaintiff also claims

that the District violated Mr. Mannina's constitutional rights by systematically failing to train its

personnel appropriately in suicide prevention, by knowingly violating safety and education

standards, and by failing to collect readily available information in a way to prevent the serious

risk of self-harm. These systematic failures were observed by an expert in prison standards and

detailed in a report commissioned by and provided to the DOC.

DEFENDANT'S STATEMENT:

The District disputes Plaintiff's statements and views them as irrelevant to this report,

which is intended update the Court on the current state of discovery disputes that may require

Court intervention.  The Plaintiff's recounting of the facts is far from neutral, beginning with its

characterization of Mr. Mannina's sexual assault of a female colleague that required

hospitalization and bone reconstruction as an "altercation."   The psychiatrist who examined Mr.

Mannina at Montgomery General there testified that there was no evidence that he was suicidal.

At intake at the D.C. Jail, both a medical doctor and a psychologist separately assessed Mr.

Mannina's psychological health and suicide risk. None of these medical professionals concluded

that Mr. Mannina was at risk of suicide.  The policy of the medical provider at the Jail is not to

tell medical staff what the inmates charges are, in order to avoid them from being biased against

them on this basis.

## SUMMARY OF THE STATUS OF DISCOVERY

Discovery in this action has proceeded slowly, and it appears that the parties are at an

impasse on several areas of discovery.

PLAINTIFF'S STATEMENT: Plaintiff seeks the Court's assistance to resolve these

matters and seeks leave to file several motions for relief.

1. First, Plaintiff seeks leave to file a motion compelling production of the documents and

updated and complete answers to interrogatories and requests for admissions. Plaintiff will

request that the Court order the District to produce relevant documents and for other relief, and

to update its outdated and seriously incomplete written discovery responses.

2. Second, Plaintiff seeks leave to file motions regarding the District's privilege claims.

Shortly before the end of discovery, the District produced an extensive privilege log withholding

hundreds of documents from production on alleged privilege grounds.  Nearly all the documents

withheld on grounds of attorney-client privilege and deliberative process privilege are not subject

to protection from nondisclosure.  In addition, because of the lateness, inadequacy, and legally

frivolous nature of the District's privilege log, Plaintiff believes the District has waived its

privilege claims in this action.

3. Third, as part of her challenge to the District's privilege claims, Plaintiff will seek

relief from the District's improper decision to instruct its deposed witnesses not to answer

questions about factual matters following Mr. Mannina's death. As a single example, it appears

that the District's DOC Director and his deputy ordered an investigator to change parts of his

investigatory report on Mr. Mannina's death. However, during this investigator's deposition, the

District instructed him not to answer relevant and purely factual questions regarding the factual

report.

4. Finally, Plaintiff intends to file a motion seeking leave to propound additional

discovery requests. In her November 10, 2016 Scheduling Order [ECF 23], Judge Jackson

initially limited the parties to 25 document requests, 40 interrogatories, and 15 requests for

admissions, but at the hearing invited the parties to request additional discovery if needed.

Plaintiff seeks additional interrogatories and document requests, and believes that this complex

case can be substantially simplified if the Court permits additional requests for admissions to

establish facts and authenticity of documents and evidence. The additional admissions will avoid

the needless cost and time of taking additional depositions to prove facts that have all but been

established by documents already produced by the District and from deposition testimony.

DEFENDANT'S STATEMENT:

**The District responses to Plaintiff's numbered paragraphs above as follows:**

**Respnse to paragraph 1. The District disagrees with Plaintiff that the parties have**

**reached an impasse on discovery that requires the Court's intervention.  Plaintiff has not**

**specifically identified how the District's responses to her requests for admission or her**

**interrogatories are inadequate or incomplete.  Other than documents the District has**

**withheld for privilege, there are no documents that Plaintiff has specifically identified and**

**requested that the District has not produced.**

**Response to paragraph 2: After considering Plaintiff's objections to the District's**

**privilege log, the District reviewed each document originally withheld for privilege and is**

**producing a subset of those documents to Plaintiff.  The District will also produce an**

**updated privilege log with additional information that Plaintiff has requested in support of**

**the claims of privilege.  Plaintiff should review these documents and updated privilege log**

**and determine whether they meet their objections before asking this Court for relief.  This**

**will happen next week.**

**Response to paragraph 3: The District is open to considering Plaintiff's position but**

**is waiting for a copy of the transcript to assess the merits of Plaintiff's argument.  The**

**Plaintiff agreed to provide the District with a copy of this deposition transcript, but hasn't.**

**Therefore, it is premature to involve the Court in this dispute.**

**Response to paragraph 4: To the District's best recollection, Judge Jackson stated at**

**the hearing that Plaintiff could request additional discovery if she can demonstrate a need.**

**The limits the Court set were reasonable, and Plaintiff has not shown a need for additional written discovery, so the District is opposed.**

## DISCUSSION

### A.      Document Discovery

PLAINTIFF'S STATEMENT: As set forth in Plaintiff's Motion to Modify Scheduling Order [ECF 42] discovery in this action has lagged badly. Because the District has nearly all of the information needed for Plaintiff to prove her case, she has been badly prejudiced by the District's inaction.

(1) The District:

i.      Produced its Rule 26 Initial Disclosures in mid-December, 2016, 18 months following the filing of this action.

ii.      Was tardy in responding to both of Plaintiff's Requests for Documents (thus waiving its objections to production of these documents).

iii.      Produced only nine pages of documents in responding to a request for "All Documents identifying, discussing, or describing Decedent's suicide."

iv.      Did not produce any document retention policies until after the close of discovery.

v.      Produced more than 80% of the discovery in this action less than five weeks before the close of discovery;

vi.      Produced its first policies regarding control of razors at DC Jail after months of delay and less than 30 days before the close of discovery;

vii.      Produced a discovery witness who stated under oath (both in response to interrogatories and in response to a request for admission) and after producing only 613 pages of documents that the District had produced all relevant documents in the action – after which the District deluged Plaintiff with approximately 12,000 more pages several weeks before the previous close of discovery.

(2) Notwithstanding the long drought followed by a deluge of documents, the District has completely failed to meet its discovery obligations. For example, after agreeing to do "test searches" for emails on five witnesses, the District took nearly 5 months to conduct the searches,

produced emails for only four witnesses, and then denied any responsibility to search for more.

At present, Plaintiff has almost no emails from the MPD personnel who had first-hand

knowledge of Mr. Mannina's suicidal condition, or from non-DOC, but District personnel who

had knowledge of Mr. Mannina's arrest, incarceration, and death. Neither has the District

produced emails or communications (other than certain policy documents) from its contractor,

Unity Healthcare, whose personnel conducted Mr. Mannina's mental status evaluation, using

District equipment at the DC Jail. The production of these emails and documents are crucial to

having an account of the District's knowledge and actions, and to evaluate the District's

assertion that crucial mental health information known to the MPD and the DOC (to name a

few) was unavailable to it. These documents have been requested but not produced.

(3) Moreover, even when emails were produced, it appeared that they had not been

reviewed. As a single example, while searching several email accounts for documents discussing

"razors," the District found and produced to Plaintiff:

- Multiple copies of an email advertisement for HP computers boasting of a "razor-sharp breathtakingly brilliant HD display." (#9016-17)

- Several copies of an emailed report about the escape of prisoners in Dade County, Florida over a "razor-wire" fence. (#9019-24)

- Multiple copies of a Washington Times article titled "DC Ward 5 homeless shelter site has strip club nearby, but no groceries" that cited "fences tangled with razor wire." (#2413, #2485 (summary), #2489, #9041)

- A CNN article about Hillary Clinton's "razor-thin" Iowa primary victory. (#9280)

- A Congressional Quarterly article discussing the "razor-thin" passage of a 2015 House of Representatives spending bill.

- An article from the Washington Blade on a "razor-thin" DC Council election. (#3389)

- An email about the National Christmas Tree lighting in 2013, stating that razor blades are not permitted at the event. (#5060)

7

- April 30, 2013 incident report regarding the arrest at a housing project of someone with a gun and a straight razor. (#7588)

- An email promoting the use of coffee filters for many purposes, including "razor nick fixers." (#8293)

- A report on the Supreme Court's "razor-thin" majority in gun right cases. (#10322)

In addition, the District has produced Program Manuals on "Use of Government Vehicles - Fleet Management," (#8417-32) and "Inmate Correspondence," (#8433-49), as well as dozens of Washington Post articles on issues as diverse as a murder mistrial (#8953); the reconstruction of Kenilworth Avenue (#9219); the delivery of a hand grenade to DC's 4th District Police for disposal (# 2682); a 2009 Metrorail crash (#2362), the hiring of new DC Director of Employment Services (#6306) and the development of DC's Southwest Waterfront (#3045).

Production of such records (and there are hundreds more) belie any claim that the District has been transparent and cooperative, or even tried to meet its discovery obligations. Rather, by delaying endlessly, withholding crucial documents, producing masses of clearly irrelevant documents, and by refusing to fulfill obligations it made, the District has confounded every effort by Plaintiff to conduct discovery efficiently.

This behavior prejudices Plaintiff, and is particularly egregious in this case, in that nearly *all* relevant information is in the District's possession.

Plaintiff has met with the District many times to seek resolution of these issues, but the situation remains unchanged. Plaintiff seeks that the District:

- Timely produce documents already sought;

- Timely produce responsive emails from DOC and MPD employees (starting with emails from the several dozen witnesses the District identified in its Rule 26

Initial Disclosure, and augmented by lists of witnesses already provided by

Plaintiff);

- Amend its discovery responses to identify which documents were produced in response to specific requests, so that the potential applicability of documents is transparent, and issues such as the production of documents on the use of coffee filters as "razor nick fixers" can be more directly addressed;

- Report to the Court regularly on its progress in identifying; and producing these documents, in light of its previous assertion that it required more than three months simply to formulate computer searches for emails; and

- Certify, under penalty of perjury, completion of these discovery obligations.

Moreover, Plaintiff seeks a declaration by the Court that the District has waived its objections to production of relevant documents.

DEFENDANT'S STATEMENT:

**As above, the District responds to the numbered portions of Plaintiff's statement as follows:**

**Response to paragraph (1)(i): The beginning of discovery in this matter was delayed because Plaintiff's original complaint included defendants and claims that did not withstand a Rule 12(b)(6) challenge.  The Scheduling order set December 12, 2016, as the date initial disclosures were due and the District filed its disclosures one day early on December 11, 2016.  *See* ECF 25.  Because the District already produced these disclosures there is no dispute for this Court to resolve.**

**Response to paragraph (1)(ii): The Department of Corrections requested a protective order in order disclose records that contain confidential information about**

inmates, corrections procedures, and personnel information. Plaintiff's counsel dragged their feet in agreeing to a protective order. So the District provided all the information Plaintiff sought about Mr. Mannina before a protective order was entered, and the remainder afterwards. Because Plaintiff now has the responses, there is no dispute for this Court to resolve.

Response to paragraph (1)(iii): After Plaintiff's suicide the Department of Corrections investigated the incident and this complete report has been provided to Plaintiff. Its not clear what Plaintiff is asking for.

Response to paragraphs (1)(iv)-(vii): Plaintiff requested documents in stages and accordingly the District has produced them in stages. The District produced interrogatory responses signed by the above-mentioned witness on March 8, 2017. On April 14, 2017, Plaintiff requested email searches and other documents which she had not previously specifically requested. Plainly, the witness's certification of the completeness of its March 8, 2017 responses did not cover discovery requests Plaintiff had yet to make. Because many of the requested documents pertained to inmate suicides and suicide attempts, they contained confidential medical information and had to be redacted to maintain inmate privacy. For this reason, review took several months. The District produced the requested documents in August and September 2017, and is in the process of producing additional documents previously withheld for privilege from these productions. Hence, it is not clear what relief Plaintiff is requesting.

Response to paragraph (2): The parties agreed to the first email search according to mail boxes and time period the Plaintiff proposed. The Plaintiff did not request emails from the officers that investigated Mr. Mannina's alleged crime and suicide. Moreover, the

officers involved have indicated that there are likely no such emails. We are willing to negotiate a reasonable search, but Plaintiff has refused to talk.

According to a May 2017 agreement with the Plaintiff, the District searched the email boxes for the Director of DOC, the investigator of Mr. Mannina's suicide, the Warden of the Jail and the correctional officers on duty when Mr. Mannina died. Plaintiff was provided with the results of the search she requested.

On October 24, 2017, Plaintiff asked the District to conduct a second email search for sixteen individuals, including the General Counsel of the Department of Corrections and a member of her legal team. The District explained to Plaintiff that it is open to searching these email boxes provided that Plaintiff will work with the District to identify reasonable search terms and time periods for the search. Plaintiff refuses to do so and insists that the District search the 16 emails for nine years. She says that the District should use the search terms and time periods the parties identified for the first email search. The time period for the first search was nine years.

These paramaters are patently inappropriate for some of the listed individuals. For instance, Plaintiff originally asked the District to produce nine years' worth of emails from certain DOC employees that contain the word "suicide." This search is appropriate for DOC employees but not for employees of the Office of the Chief Medical Examiner or MPD officers, who are regularly tasked with investigation of suicides that do not take place at the D.C. Jail. Some of the 16 mail boxes are for MPD officers whose only involvement in this case was their investigation of Mr. Mannina's alleged crime and suicide. The Plaintiff has also asked the District to search the emails of Unity, a subcontractor of the District. However, the District does not have access to Unity's emails. The District is

**willing to search of the emails it has access to for those mentioning Mr. Mannina, but would prefer to reach agreement with Plaintiff about the scope of the search at the outset.**

**Response to paragraph (3): Plaintiff also objects that the District has produced emails that she views as irrelevant. Plaintiff specifically asked the District to search email boxes for emails containing the word "razor" and to produce those emails to her, and the District did so. If Plaintiff wants additional emails, it is reasonable to expect Plaintiff to work with the District to identify search terms for the email boxes she wants the District to search. The District is also willing to work with Plaintiff to tailor the list of search terms or to filter emails from external spam domains to exclude irrelevant emails from any subsequent production.**

B.      Written Discovery

PLAINTIFF'S STATEMENT: As discussed above, the District has not taken its obligation to respond to Plaintiff's Interrogatories and Requests for Admissions in any serious way. Many of the questions are not answered substantively at all, and some, such as certifying the completion of discovery after release of 600 pages but virtually no emails, no policies regarding razor control, and the retention policies, seem absurd to no real purpose. Plaintiff wishes to bring these responses to the Court for an appropriate order to compel complete and updated answers, and for other relief.

DEFENDANT'S STATEMENT:

**The District has tried to work with Plaintiff to give her the information she claims she needs.**

C.      Privilege Claims

PLAINTIFF'S STATEMENT: Several weeks before the close of discovery, the District dumped on Plaintiff a massive privilege log with more than 350 entries, detailing documents that were withheld or redacted based on claims of privilege, deliberative process, and/or work product. Plaintiff does not now challenge the District's work product claims, but wishes to file a motion seeking production of documents withheld under the attorney-client and deliberative process privilege.

The District's claims of privilege do not pass any basic test of nonfrivolousness. Many of the documents withheld appear to be purely factual in nature and not the subject of legal analysis or part of a deliberative process. For a large number of the documents withheld under the attorney-client privilege, no attorney appears to be involved, no attorney is named, and no legal matter is identified. Likewise, many documents withheld under the deliberative process privilege are strictly factual and do not appear to involve any deliberative process whatsoever.

Plaintiff intends to seek not only production of withheld documents, but a declaration that the District has waived the protection of these privileges because of the late and ill-taken nature of its claims to date. For example, the District withheld from production under the deliberative process privilege a *public report* that was:

- Produced to DOC by an outside consultant;

- The subject of public hearings before the DC Council;

- Widely reported upon by the Washington Post; and

- Attached to the current Complaint in this action.

Case 1:15-cv-00931-KBJ-RMM   Document 47   Filed 11/17/17   Page 14 of 17

The deliberative process privilege seems inappropriate for this public document, and the District's claim regarding it is not well taken.[1]

In negotiations with the District, the District has stated that it intends to produce the vast majority of the documents it has withheld under privilege claims "soon." While this is a welcome development, this does not exonerate the District's frivolous assertion of privilege. Rather, it appears to be an acknowledgment that nearly all of the District's privilege claims are without basis, and Plaintiff will ask the Court to determine that because of the District's behavior it no longer is entitled to assert attorney-client privilege or deliberative process privilege in this action.

Likewise, as stated above, the District has instructed witnesses not to answer questions about purely factual matters. Plaintiff awaits transcripts in these matters, but if the District will not withdraw its instructions and permit re-deposition of these witnesses on conditions agreeable to Plaintiff, Plaintiff will bring these issues to the prompt attention of the Court.

DEFENDANT'S STATEMENT:

In light of Plaintiff's objections to its privilege withholding and its privilege log, the District has reviewed all documents it originally withheld for privilege and is disclosing additional documents to Plaintiff.  The District's litigation support team is currently preparing the production.  The District does not maintain that the Hayes report (the document Plaintiff mentions above) is privileged, and this report and communications related to it have been produced to Plaintiff.  Plaintiff should review the District's new production and updated privilege log before asking this Court to intervene.

**D.     Additional Discovery**

---

[1] The withholding of this public document did not prejudice Plaintiff, but does illustrate the District's cavalier attitude in invoking privilege.

14

PLAINTIFF'S STATEMENT: Plaintiff seeks leave of the Court to propound additional discovery. In her November 10, 2016 Scheduling Order [ECF 23], Judge Jackson initially limited the parties to 25 document requests, 40 interrogatories, and 15 requests for admissions. Given the complexity of this case, Plaintiff seeks leave to propound 15 additional interrogatories and 15 additional document requests. Additionally, as Plaintiff believes that the complexity of this case can be significantly tamed by the early establishment of facts and issues, Plaintiff seeks leave of the Court to propound requests to admit to establish facts and authenticity of documents and evidence without limit, while preserving to the District objections of burdensomeness and abuse.

DEFENDANT'S STATEMENT:

**At various points in the discovery process, Plaintiff has asked the District for additional documents that were not specifically requested in their initial 25 document requests.  The District has responded to these requests and has produced the requested documents.  Although the District is willing to conduct a targeted search of additional emails if Plaintiff can work with the District to identify search terms and parameters, the District opposes any additional written discovery from Plaintiff unless Plaintiff can show a need.**

**E.      Discovery Hearing**

PLAINTIFF'S STATEMENT: Plaintiff respectfully requests a hearing with the Court to address the matters raised in this Joint Statement.

DEFENDANT'S STATEMENT:  The District does not request a hearing as it sees no need to seek the Court's intervention at this time.

Dated: November 17, 2017                    Respectfully submitted,

/s/ Ray M. Aragon
RAY M. ARAGON, Bar No. 41822
Press, Dozier & Hamelburg, LLC
7910 Woodmont Avenue, Suite 1350
Bethesda, Maryland 20814
Tel: (301) 913-5200
Fax: (301) 913-5205
Email: raragon@pressdozierlaw.com
*Counsel for Plaintiff*

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Sarah L. Knapp*
SARAH L. KNAPP [470008]
Acting Section Chief, Section III

*/s/ Steve Anderson*
STEVE ANDERSON [334480]
Assistant Attorney General
Civil Litigation Division, Section III
441 Fourth Street NW, Suite 630 South
Washington, DC 20001
Phone: (202) 724-6607
Fax: (202) 741-5923
Emaill:  steve.anderson@dc.gov

/s/ *Cara J. Spencer*
CARA J. SPENCER [1023182]
Assistant Attorney General,
Civil Litigation Division, Section III
441 4th Street, NW, Suite 600 South
Washington, DC 20001
Phone: (202) 442-9754
Fax: (202) 741-0431
Email: cara.spencer@dc.gov

16

*Attorneys for the District of Columbia*