|  |  |
|---|---|
| VICTORIA MANNINA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No.: 1:15-cv-931 (KBJ/RMM) |
|  | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## MEMORANDUM OPINION

Plaintiff Victoria Mannina ("Plaintiff" or "Ms. Mannina") filed a Motion to Compel Production of Documents Withheld by Defendant as Privileged, or in the Alternative, for *In Camera* Review of Withheld Documents ("Motion").  *See generally* Pl.'s Mot., ECF No. 83.  In that motion, Ms. Mannina challenges Defendant District of Columbia's ("Defendant" or "the District") assertion of the deliberative process and attorney-client privileges to redact and withhold several documents.  On March 29, 2019, the Court issued an Order that partially granted and partially denied the Motion.  *See* ECF. No. 118.  This Memorandum Opinion provides the rationale for that ruling in greater detail.

## BACKGROUND

### I.    Factual Background[1]

This case arises from the suicide of Paul Mannina ("Mr. Mannina"), while he was in the custody of the District of Columbia Department of Corrections ("DOC").  Mr. Mannina was arrested on June 7, 2013, after being admitted to a hospital emergency room with high levels of

---

[1]    Given the posture of the case, the Court relies on the facts alleged in the complaint.

alcohol, opiates, and Tylenol in his system and for a "change in mental state." 2d Am. Compl. ¶¶ 14, 16, ECF No. 33. On June 13, 2013, Mr. Mannina was arraigned, before the D.C. Superior Court, for one count of first-degree burglary while armed and one count of third degree sexual abuse while armed. *Id.* ¶¶ 11, 18. The Pretrial Services Agency ("PSA") officer, who had met with Mr. Mannina prior to the arraignment, reported that Mr. Mannina had thoughts and attempts regarding harming himself. *Id.* ¶ 18. The court denied release, and Mr. Mannina returned to D.C. Superior Court on June 17, 2013 for a preventive detention hearing. *Id.* ¶¶ 19, 24. In an updated report, the PSA officer restated concerns regarding Mr. Mannina's attempts to harm himself. *Id.* ¶ 24. The court ultimately ordered detention. *Id.* ¶ 25. On June 18, 2013, Mr. Mannina committed suicide while in DOC custody, using a razor. *Id.* ¶ 35.

Ms. Mannina brings this action as Mr. Mannina's widow and the representative of Mr. Mannina's estate. *Id.* ¶ 1. Ms. Mannina alleges that the District of Columbia violated Mr. Mannina's civil rights under 42 U.S.C. § 1983 by depriving him of his Fifth Amendment due process rights and also raises tort claims under theories including negligence and wrongful death. *See id.* ¶¶ 36–54. Several of those claims rest on the premise that the District failed to adequately respond to or mitigate the risk that Mr. Mannina would attempt to commit suicide.

## II.    Relevant Procedural Background

The instant dispute concerns the District's assertion of privilege to withhold and redact records that were produced in response to Ms. Mannina's informal discovery requests. Pursuant to Federal Rule of Civil Procedure 34, Ms. Mannina served two sets of requests for production of documents on the District, comprising twenty-five requests.[2] *See* Joint Status Report, Ex. E

---

[2]    The Scheduling Order allows each party to serve only twenty-five requests for production. *See* Scheduling Order ¶ 2.d., ECF No. 23.

("Def.'s Resp. to 1st Set RFP"), ECF No. 52-6 (filed under seal) (the District's Responses to Plaintiff's First Set of Request for Production of Documents: Requests # 1–21) & Ex. F ("Def's Resp. to 2nd Set RFP"), ECF No. 52-7 (filed under seal) (the District's Response to Plaintiff's Second Request for Production of Documents: Requests # 22–25).[3]  The District responded to these requests on December 19, 2016 and March 8, 2017, respectively, and produced additional material in July 2017.  *See id.*; *see also* Def.'s Opp'n to Pl.'s Mot. ("Def.'s Opp'n") at 2, ECF No. 85.

Ms. Mannina then continued to request information from the District, including between March 2017 and May 2017, through a series of "informal discovery requests."[4]  *See* Def.'s Opp'n at 3; Def.'s Notice Regarding Pl.'s Informal Doc. Requests ("Def.'s Notice I") at 2, ECF No. 58; Pl.'s Report to Ct. Regarding Informal Doc. Request Spreadsheet, Ex. 1, ECF No. 82-1. Ms. Mannina contends that these additional requests correspond to and sought additional information regarding her formal requests for production.  *See* Pl.'s Notice Regarding Informal Disc. Requests to Def. ("Pl.'s Notice I"), ECF No. 56; Pl.'s Notice Regarding Def.'s Deficient Doc. Resps. ("Pl.'s Notice II") at 3–4, ECF No. 68.  The District contends that the informal requests went "far beyond" Ms. Mannina's formal document requests.  Def.'s Notice I at 2. Nevertheless, the District responded to Ms. Mannina's informal requests, including those made between March and May 2017.  *See* Def.'s Opp'n at 3.  The District initially produced records in

---

[3]  Exhibits E and F to the Joint Status Report (ECF No. 48) were filed under seal because Ms. Mannina asserted that "certain of the exhibits consist of documents the District has marked 'Confidential.'"  Joint Status Report at 6 n.1, ECF No. 48; 1/17/2018 Minute Order (ordering the filing under seal of the exhibits referenced in footnote 1 of the Joint Status Report, ECF No. 48). The Court cites to the contents of Exhibits E and F as these documents are not marked confidential.

[4]  On January 19, 2018, the Court ordered Ms. Mannina to "cease making additional informal requests for production of documents."  Order at 5, ECF No. 53.

response to these informal requests in August and September 2017, and the District included a privilege log with its September 2017 production. *See id.* In November and December 2017, the District produced additional documents previously withheld, including a revised privilege log. *See id.* The instant motion concerns documents that the District redacted and withheld on the December 2017 privilege log. *See* Def.'s Sur-Reply to Pl.'s Mot. ("Def.'s Sur-Reply") at 3, ECF No. 88.

On October 27, 2017, the Honorable Ketanji Brown Jackson referred this matter to the undersigned for management of discovery. *See* 10/27/2017 Min. Order; 10/27/2017 Random Case Referral. After several status reports from the parties and a discovery status conference held on January 17, 2018, the Court set a schedule to assist the parties in clearly identifying the scope and nature of their numerous discovery disputes. *See* Order, ECF No. 53. In response to this Order, the parties filed several notices concerning Ms. Mannina's interrogatories and requests for production, and the District's assertions of privilege.[5] After reviewing these filings, the Court set a briefing schedule for the instant Motion to Compel, which has been fully briefed. *See* 5/24/2018 Min. Order; *see generally* Pl.'s Mot.; Def.'s Opp'n; Pl.'s Reply to Def.'s Opp'n ("Pl.'s Reply"), ECF No. 86; Def.'s Sur-Reply.

After briefing was completed, the Court requested additional information from the District and reviewed the withheld documents *in camera*. *See* Order, ECF No. 99 (requesting clarification and supplementation of affidavits); Order, ECF No. 110 (requesting additional information and documents for *in camera* review); 3/18/2019 Min. Order (requesting

---

[5] Notices regarding Defendant's response to Plaintiff's interrogatories may be found at ECF Nos. 55, 59, and 63. Notices regarding Defendant's assertion of privilege may be found at ECF Nos. 57 and 62. Notices and responses regarding Plaintiff's requests for production may be found at ECF Nos. 56, 58, 63, 65, 68, and 82.

information regarding Docs. 74, 75, and 76). The District timely provided all requested information, and Ms. Mannina responded to some of the District's supplemental filings. *See* Def.'s Resp. Regarding Privilege Designations, ECF No. 106; Def.'s Notice of Filing, ECF No. 111; Def.'s Resp. to Ct.'s Feb. 21, 2019 Order, ECF No. 114; Pl.'s Resp. to Def.'s Resp. to Ct.'s Feb. 12 and Feb. 21, 2019 Order, ECF No. 115.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 37, a party propounding discovery may request an order from the court compelling disclosure or discovery from the opposing party when, *inter alia*, the opposing party does not produce documents requested under Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iv). The moving party "bears the initial burden of explaining how the requested information is relevant," and of proving that the challenged discovery responses were incomplete. *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007); *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007); *see also Alexander v. FBI*, 193 F.R.D. 1, 3 (D.D.C. 2000). The non-moving party must then explain "why discovery should not be permitted." *Jewish War Veterans*, 506 F. Supp. 2d at 42.

When a party claims a privilege as the basis for withholding documents, that party "bears the burden of proving the communications are protected." *Felder v. Washington Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 224 (D.D.C. 2015) (internal quotation marks omitted) (quoting *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)). To carry that burden, the party asserting the privilege must "present the underlying facts demonstrating the existence of the privilege," and "conclusively prove each element of the privilege." *In re Lindsey*, 158 F.3d at 1270 (internal quotation marks and citations omitted). "[T]he proponent of a privilege . . . 'must offer more than just conclusory statements, generalized assertions, and unsworn averments of its

counsel.'" *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 127 (D.D.C. 2012) (internal quotation marks omitted) (quoting *In re Veiga*, 746 F. Supp. 2d 27, 33–34 (D.D.C. 2010). If the party asserting the privilege fails to present sufficient facts to allow the Court to "state *with reasonable certainty* that the privilege applies, this burden is not met." *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) (emphasis added).

## DISCUSSION

### I.      What may be Compelled Under Rule 37

Federal Rule of Civil Procedure 37 governs motions to compel discovery responses, and provides in relevant part that:

> A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
>
> . . .
>
> (iv) a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34.

FED. R. CIV. P. 37(a)(3)(B). By its express terms, Rule 37 only authorizes the Court to compel a party to respond to document requests issued under Rule 34. *See id.* Consequently, "before a party may succeed on a motion to compel discovery, that party 'must first prove that it sought discovery' in the manner required by the rules of procedure." *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 359–60 (3d Cir. 2003) (quoting *Petrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298, 1310 (3d Cir. 1995)); *cf. Koehler v. United States*, No. 90-2384 (RCL), 1991 WL 277542, at *2 (D.D.C. Dec. 9, 1991) (denying motion to compel where plaintiff sought production of nine documents withheld as privileged where plaintiff had never requested those documents through discovery).

As Ms. Mannina's motion does not identify the specific discovery request or requests to

which the motion to compel pertains, the Court must first confirm whether and to what extent the documents that the District has withheld or redacted as privileged correspond to a discovery request propounded in accordance with Federal Rule of Civil Procedure 34. This task is complicated by the fact that the District has produced numerous documents in response to Ms. Mannina's informal discovery requests whose relation to formally served discovery is in dispute. Thus the Court must resolve two questions: (1) which document requests are at issue in the parties' dispute about privilege? and (2) does Rule 34 require the District to produce non-privileged records in response to that document request?

The District asserts that its December 2017 privilege log contains all the disputed privilege designations, and Ms. Mannina has not disputed that assertion. *See* Def.'s Sur-Reply at 3 & n.4. The District further explains that the documents on its December 2017 privilege log were produced in August and September 2017 in response to informal document requests that Ms. Mannina made between March and May 2017. *See* Def.'s Opp'n at 3. The parties' email correspondence from May 2017 reveals that the search terms used to identify the documents that the District released in August and September 2017 match the search terms that Ms. Mannina asked the District to use to find records responsive to certain April 2017 Informal Requests.[6]

Accordingly, the Court concludes that the discovery requests at issue in this Motion originate from Ms. Mannina's April 2017 Informal Requests. *See* Def.'s Notice I, Ex. 1 at 7–8, rows 25–29, ECF No. 58-1; Pl.'s Report to the Ct. Regarding Informal Doc. Req. Spreadsheet,

---

[6] The referenced email, a 5/2/2017 e-mail from Plaintiff's counsel to Defense counsel setting forth proposed email search terms, was provided to the Court and opposing counsel by email on March 14, 2018 (timestamp 10:56 PM) as one of the exhibits (Exhibit A) to Plaintiff's Notice Regarding Defendant's Deficient Document Responses [ECF No. 68]. However, Plaintiff has not yet sought to file these exhibits on the docket.

Ex. at 12–13 ("Informal Req. Chart"), ECF No. 82-1.  The relevant April 2017 Informal

Requests sought:

- All email correspondence from 2008 to the present regarding suicide prevention, training, and suicide attempts
- All email correspondence regarding the Leslie [sic] Hayes Report from 2013 to present
- All email correspondence regarding the suicide task force from 2008 to present
- [A]ll email correspondence regarding the distribution, use, or control of razor blades from 2008 to present
- All email correspondence regarding Paul Mannina from June 2013 to present

Informal Req. Chart at 12–13.

Next, the Court must determine whether any of these informal discovery requests fall

within the scope of Ms. Mannina's formally served Rule 34 document requests.  If the District

produced records voluntarily outside of any formal request, Rule 37 does not authorize the Court

to compel a further response regardless of the applicability of any privileges asserted by the

District.  Ms. Mannina contends that the informal requests constitute a narrowing of her formal

discovery requests.  *See* Pl.'s Reply at 3 (noting that "[i]n almost all instances, the so-called

informal requests were not new requests but merely attempts to prod the District to do what it

had failed to do").  The District disagrees, indicating that many of the informal requests were

outside the scope of the original requests.  *See* Def.'s Opp'n at 3 & n.3 (citing Def.'s Responsive

Notice Regarding Pl.'s Doc. Reqs., ECF No. 65) (noting with respect to the informally requested

"nine years' worth of emails" that "Plaintiff's original requests plainly did not seek these

documents.").

To evaluate which, if any, of the pertinent informal requests are within the scope of Ms.

Mannina's formal document requests, the Court looks to the parties' submissions identifying the

informal document requests and any allegedly corresponding formal document requests; the District's chart identifying the document requests to which the challenged documents on the privilege log respond; and the content of each request. *See* Order at 4–5, ¶¶ D.1–D.7, ECF No. 53; Informal Req. Chart. The District has confirmed that most of the disputed documents were produced in response to the April 2017 informal requests regarding (1) suicide prevention, training, and suicide attempts; and (2) the DOC Suicide Prevention Task Force ("Task Force"). *See* Notice of Filing, Ex. A ("Def.'s Suppl. Chart"), ECF No. 111-1. The remaining documents were produced voluntarily because they were located through email search terms but were not actually responsive to any of the informal requests. *See* Def.'s Resp. to Ct.'s Feb. 21, 2019 Order at 1, ECF No. 114.

Ms. Mannina alleges that the pertinent April 2017 informal requests correspond to the following formal Requests for Production:

| April 2017 Informal Request | Alleged Corresponding Document Request No. |
|---|---|
| All email correspondence from 2008 to the present regarding suicide prevention, training, and suicide attempts. | 13 – All Documents identifying, discussing or describing Decedent's suicide. |
| | 15 – All Documents describing mental health and suicide prevention training requirements for The District, including records of such training. |
| | 16 – All Documents, written materials, and protocols used by The District in mental health or suicide prevention training. |
| | 17 – All audits, reports or evaluations of the effectiveness of mental health and suicide prevention training of The District and employee of The District, including any evaluation identifying (a) whether the required training was effective; (b) whether the required training failed in any way to meet The District' requirements; (c) whether Defendant met its own training requirements; (d) what criticisms or failures The District identified in its mental health and suicide training; (e) identifying any Person or Persons who received mental health and suicide prevention training; (f) identifying any Person or Persons who received mental health and suicide prevention training but did not receive all of the required training; and (g) any Person or Persons who should have received mental health and suicide prevention training but did not receive it. |

| **April 2017 Informal Request** | **Alleged Corresponding Document Request No.** |
|---|---|
| All email correspondence regarding the suicide task force from 2008 to present | 13, 15, 16, 17<br>*See supra*<br><br>6 - All Documents and Communications, whether in Person, by telephone, or by some other means, whether in a discussion, meeting or other setting, relating to the subject matter of this litigation, the Complaint, the Answer, the Documents requested herein, and/or the Subject Products, between, among, by, or with any Persons, including but not limited to: Defendants; Defendants' employees, former employees, agents, and/or representatives; and customers or users. |

*See* Informal Req. Chart at 12, rows 25, 27; *see also* Def.'s Resp. to 1st Set RFP, ECF No. 52-6.[7] The Court agrees that both informal requests are within the scope of at least one formal document request, and therefore, may be compelled; however, the Court makes this determination without deciding which formal request(s), as Plaintiff failed to make this argument in her briefing. Therefore, the District has an obligation to produce the non-privileged documents responsive to those requests and may be compelled to produce or un-redact any improperly withheld documents.

Several privilege log entries concern documents that "were not directly responsive to the informal requests," and therefore are outside the scope of Rule 37. Def.'s Resp. to Ct.'s Feb. 21, 2019 Order at 1, ECF No. 114. Although Ms. Mannina contends that the fact that the District found these documents and included them on the privilege log proves that they are responsive to a document request, she has neither identified the formal or informal document requests to which those documents pertain, nor provided any evidence that rebuts the District's description of its search and production. *See* Pl.'s Resp. to Def.'s Resp. to Ct.'s Orders of Feb. 12 & Feb. 21, 2019 at 1–2, ECF No. 115. As the District voluntarily produced those documents, the Court

---

[7] *See supra* n.3.

cannot compel their production even if they are not privileged.  Accordingly, the Court will not

reach the merits of the District's assertion of privilege regarding the following documents:

- Documents 53, 80–96.

- Documents 33, 34, 41, 45, 51–52, 67, 101–104.

*See* Notice of Filing, Ex. A, ECF No. 111-1 (entries marked as "None" in the column labeled

"Informal Request"); Def.'s Resp. to Ct.'s Feb. 21, 2019 Order, ECF No. 114.  The chart below

consolidates and identifies the remaining disputed documents considered by the Court and those

identified as outside the scope of Rule 37.

| Privilege Asserted | Disputed and Considered | Disputed but Outside Scope |
|---|---|---|
| Deliberative Process | 1–6, 18, 32, 35–39, 50, 57[8] | 53, 80–96 |
| Attorney-Client | 14–16, 19, 21, 25–27, 29, 46–48, 54–56, 64–65, 74–79, 99–100 | 33–34, 41, 45, 51–52, 67, 101–104 |

## II.     Adequacy of the Privilege Log

Ms. Mannina also challenges the adequacy of the privilege log entries supporting the

District's assertions of the deliberative process privilege and the attorney-client privilege.  *See*

Pl.'s Mot., Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem") at 16–18, ECF No. 83-1.  A privilege log

must describe the withheld information "in a manner that, without revealing information itself

privileged or protected, will enable other parties to assess the claim."  FED. R. CIV. P. 26(b)(5).

Specifically, for each document withheld pursuant to a privilege, the log should "state the basis

upon which the privilege is claimed, the subject matter, number of pages, author, date created,

and the identity of all persons to whom the original or any copies of the document were shown or

---

[8]     Although the Privilege Log includes Document 16, the "Code for Objections" column
shows that Ms. Mannina objects only to the attorney-client privilege designation on this
document.  Accordingly, the applicability of the deliberative process privilege to Document 16 is
not before the Court.

provided." *Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009) (internal quotation marks and citation omitted). Even if a party fails to provide a privilege log that meets those requirements, courts rarely deem the privilege waived. *See TIG Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, 718 F. Supp. 2d 90, 97 (D.D.C. 2010) ("[T]he court generally does not deem a party to have waived a privilege because it did not provide an adequate privilege log."); *Loftin*, 258 F.R.D. at 33 (noting that inadequate descriptions "do not result in a wholesale forfeiture of defendant's claim of privilege"); *see generally United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) ("[W]aiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith.").

The District's privilege log and the declaration of Beth Mynett, together, provide enough information to allow the Court to evaluate the District's assertion of the deliberative process privilege. *See* Def.'s Responsive Notice Regarding Assertions of Privilege, Ex. 2, ECF No. 62-3 ("Declaration of Beth Mynett Dated January 19, 2018" produced with the District's privilege log). "A common practice of agencies seeking to invoke the deliberative process privilege is to establish the privilege through a combination of privilege logs, which identify specific documents, and declarations from agency officials explaining 'what the documents are and how they relate to the [agency] decision.'" *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) (alteration in original) (quoting *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 308 (D.D.C. 2009)). These filings must enable the Court "to determine . . . that the documents withheld are (1) predecisional; (2) deliberative; (3) do not 'memorialize or evidence' the agency's final policy; (4) were not shared with the public; and (5) cannot be produced in a redacted form." *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 222 F. Supp. 3d 38, 42–43 (D.D.C. 2016) (quoting *Ascom Hasler*, 267 F.R.D. at 4 (internal quotation marks

omitted)); *see also Huthnance v. District of Columbia*, 268 F.R.D. 120, 123 (D.D.C. 2010).

Here, the District's privilege log provides Bates number start and end ranges, the date of

production, the date of the document, whether the document was redacted or withheld, and a

descriptive narrative describing the redactions or withheld document. Therefore it provides

sufficient information for the Court to evaluate the five factors noted above. *See Pension Benefit*

*Guar. Corp.*, 222 F. Supp. 3d at 42–43.

The District's privilege log also adequately articulates a basis for asserting the attorney-

client privilege. *See infra* Part V (setting forth the legal standard for asserting the attorney-client

privilege). The log clearly identifies the documents, the senders and recipients where applicable,

and includes a descriptive narrative describing the reasons for redacting or withholding each

document. The unredacted portions of documents provide additional context and information to

evaluate the privilege identified on the Privilege Log. *See* Def.'s Sur-Reply at 5–7. As the Court

also has copies of the disputed documents for *in camera* review, the Court has ample information

to evaluate the District's assertion of the attorney-client privilege.

In sum, the District has adequately described the withheld documents and the basis for its

assertions of privilege. Accordingly, the Court DENIES Plaintiff's request that the District be

deemed to have waived its privileges as a sanction for the alleged deficiencies in the District's

privilege log. *See* Pl.'s Mem. at 18.

## III. <u>Deliberative Process Privilege</u>

The District asserts the deliberative process privilege over two categories of documents

— documents and information related to the Task Force; and documents and information related

to a third-party healthcare contract. *See generally* Def.'s Resp. Regarding Privilege

Designations, Ex. 1., Decl. of Beth Mynett Dated Nov. 20, 2018 ("Mynett Decl."), ECF No. 106-

1 & Ex. 2, Decl. of Gitana Stewart-Ponder ("Stewart-Ponder Decl."), ECF No. 106-2. The

District supports its assertion of privilege with the declarations of Beth Mynett, Medical Director

and Health Services Administrator for the DOC, and Gitana Stewart-Ponder, Deputy Director for

Administration of the DOC. *See id.* As discussed *supra*, Ms. Mannina has not proven that

Documents 53 and 80–96 — documents and information related to a third-party healthcare

contract that are addressed in Ms. Stewart-Ponder's declaration — are within the scope of a Rule

34 discovery request; therefore the Court will not evaluate whether those documents are

privileged. Accordingly, the following analysis considers only the documents and information

related to the Task Force and identified *supra* as within the scope of formal discovery —

Documents 1–6, 18, 32, 35–39, 50, and 57.

The deliberative process privilege "covers documents reflecting advisory opinions,

recommendations, and deliberations comprising part of a process by which governmental

decisions and policies are formulated." *Dep't of the Interior & Bureau of Indian Affairs v.

Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck &

Co.*, 421 U.S. 132, 150 (1975)) (internal quotation marks omitted). This privilege "rests on the

obvious realization that officials will not communicate candidly among themselves if each

remark is a potential item of discovery and front page news," and is designed to "enhance the

quality of agency decisions by protecting open and frank discussion among those who make

them within the Government." *Klamath*, 532 U.S. at 8–9 (internal quotation marks and citations

omitted).

To qualify for the privilege, documents must be both "predecisional" and "deliberative."

*In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017); *see also

Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). A

document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp.*, 976 F.2d at 1434 (internal quotation marks omitted) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)); *see also Judicial Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017); *Cobell v. Norton*, 213 F.R.D. 1, 4–5 (D.D.C. 2003). Thus a predecisional document must "precede[], in temporal sequence, the 'decision' to which it relates." *Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987); *see also Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) ("To be pre-decisional, the communication . . . must have occurred before any final agency decision on the relevant matter."). A document is "deliberative" if it "is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive*, 752 F.3d at 463. Moreover, the deliberative process privilege is qualified, and even documents that reflect agency officials' deliberative opinions may be disclosed if "the private need for disclosure outweighs the public interest in non-disclosure." *In re Anthem*, 236 F. Supp. 3d at 159 (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).

A.      **Whether the District Properly Invoked the Deliberative Process Privilege**

To assert the deliberative process privilege, a party must submit: (1) a formal claim of privilege by the head of the relevant department; (2) based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege was claimed and why it properly falls within the scope of the privilege. *Landry v. FDIC,* 204 F.3d 1125, 1135 (D.C. Cir. 2000) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir. 1984)) (noting requirements of the deliberative process privilege). If a party's

initial assertion of the deliberative process privilege lacks sufficient information, the party may supplement the record to cure the deficiency. *See Cobell*, 213 F.R.D. at 8.

Although the District failed to provide sufficient information in its initial assertion of the privilege, the revised declaration of Beth Mynett cures the initial deficiencies. As the Medical Director and Health Services Administrator for the DOC, Mynett Decl. ¶ 1, Ms. Mynett qualifies as the "head of department" for purposes of asserting the deliberative process privilege and has "sufficient rank" to assert the deliberative process privilege "in a deliberate, considered, and reasonably specific manner.'" *Landry*, 204 F.3d at 1135–36 (internal quotation marks and citation omitted) (finding that "it would be counterproductive to read 'head of the department' in the narrowest possible way"); *see* Mynett Decl. ¶ 2. In her declaration, Ms. Mynett formally asserts the deliberative process privilege, based on her personal review of the material, and specifies why the privilege was claimed for the disputed documents. *See* Mynett Decl. ¶¶ 3, 5–10; *see also Landry,* 204 F.3d at 1135. Accordingly, the District has properly invoked the deliberative process privilege.

### B. Whether the District has Waived the Privilege

Waiver of the deliberative process privilege occurs where privileged material has been voluntarily disclosed to "unnecessary third parties," with such waiver extending only to "the document or information specifically released, and not for related materials." *In re Sealed Case*, 121 F.3d at 741; *see, e.g.*, *Heffernan v. Azar*, 317 F. Supp. 3d 94, 120 (D.D.C. 2018); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 890 F. Supp. 2d 35, 46 (D.D.C. 2012). Ms. Mannina bears the burden to "produc[e] at least some evidence that the deliberative process privilege has been waived." *Heffernan*, 317 F. Supp. 3d at 120 (internal quotation marks omitted) (quoting *Elec. Frontier Found.*, 890 F.Supp.2d at 46).

### *1.* ***Document No. 2***

In a footnote to her Motion, Ms. Mannina asserts that the District waived any privilege

applicable to the July 22, 2013 minutes of the Suicide Prevention Task Force by releasing the

minutes. *See* Pl.'s Mem. at 12 & n.6 (referring to Exhibit B of ECF No. 48). This document is

identical to Document 2 in the Privilege Log, over which the District has asserted the

deliberative process privilege and which Plaintiff seeks to compel. *See* Def.'s Sur-Reply, Ex. 1

("Privilege Log"), Doc. No. 2, ECF No. 88-1[9] (noting that the document was "inadvertently

produced to Plaintiff in unredacted form at D.C. 1.15-cv-00931-012521 to 012525"); Joint Status

Report [ECF No. 48], Ex. B, ECF No. 52-2 (filed under seal) (document with Bates range DC

1.15-cv-00931-012521 to 012525). The District asserts that its disclosure of Document 2 was

inadvertent, and Ms. Mannina does not contend otherwise. *See* Privilege Log, Doc. No. 2

(District's Response column). Accordingly, the Court will consider whether the District's

inadvertent release waived the deliberative process privilege for the redacted sections of

Document 2.

This Circuit has not directly addressed the effect of an inadvertent disclosure on a party's

ability to assert the deliberative process privilege, as precedent regarding the waiver of the

deliberative process privilege concerns "voluntary" disclosures. *See, e.g.*, *In re Sealed Case*, 121

F.3d at 741–42 (concluding that agency's voluntary disclosure of documents waived the

deliberative process privilege). In other jurisdictions, the effect of inadvertent disclosures of

deliberative material remains an "unsettled" area of law. *Texaco Puerto Rico, Inc. v. Dep't of*

*Consumer Affairs*, 60 F.3d 867, 885 n.8 (1st Cir. 1995) (noting that "the question of waiver . . . is

---

[9]  To increase legibility, the District gave the Court an Excel version of the PDF docketed as
ECF No. 88-1.

apparently unsettled"); *Kennedy v. City of New York*, No. 05 CV 246 (BMC), 2006 WL 8439096, at *6 n.3 (E.D.N.Y. Oct. 16, 2006) ("The Court notes that whether the deliberative process privilege may be waived through inadvertent disclosure is an unsettled area of law."), *aff'd*, No. CV-05-0246 (BMC) (CLP), 2006 WL 8439095 (E.D.N.Y. Dec. 7, 2006). Federal Rule of Evidence 502 addresses the effect of inadvertent disclosures of attorney-client privileged or work product material, and courts have disagreed about whether Rule 502(b)'s principles should be extended to the deliberative process privilege. *Compare Bayliss v. New Jersey State Police*, 622 F. App'x 182, 186 (3d Cir. 2015) (citing FED. R. EVID. 502(b)) (finding that inadvertent disclosure did not waive the deliberative process privilege where "the State took reasonable steps in preventing and rectifying the disclosure") *with United States v. Broombaugh*, No. 14-40005-10-DDC, 2017 WL 2734636, at *5–6 (D. Kan. June 26, 2017) (determining that Rule 502 does not extend to waivers of deliberative process privilege). *Cf. In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, No. 04-1639 (RJL), 2009 WL 10708594, at *1 n.2 (D.D.C. June 9, 2009) (citing *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)) (applying Rule 502(b) to deliberative process privilege, but declining to decide whether Rule 502(b) applies only to attorney-client and work product privilege claims and whether a strict waiver rule applies to deliberative process privilege).

The Court concludes that the District has not waived its ability to assert the deliberative process privilege over Document 2. As the text of Rule 502(b) expressly references only the attorney-client privilege and work product protection, that rule's framework should not be extended to evaluate the effect of inadvertent disclosures of material subject to the deliberative process privilege. *See* FED. R. EVID. 502. Instead, the Court concludes that only intentional disclosures of information subject to the deliberative process privilege operate to waive that

privilege.  Unlike the public release of a document, an inadvertent disclosure does not reflect an intent to abandon a privilege.  Making waiver the automatic consequence of such a mistake would undermine the important interests that the deliberative process privilege serves.  As Ms. Mannina has not proven that the District's release was intentional, the District may assert the deliberative process privilege over Document 2 despite its inadvertent disclosure of the document.  *See generally Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 856 (3d Cir. 1995) (finding that the district court did not err when it found that the United States' disclosure of documents in discovery did not waive the deliberative process privilege as the "disclosure was 'inadvertent' and did not qualify as a 'voluntary' waiver").

### 2.    *Document No. 50*

Although Ms. Mannina does not assert that the District has waived the deliberative process privilege for Document 50, the record demonstrates that the District has released that document to Ms. Mannina in unredacted form.  *See* Privilege Log, Doc. No. 50 (noting that the document was "identical to [a] report produced in unredacted form" and providing Bates ranges). The District does not suggest that its production of that document was inadvertent, and simply states that the report was "produced in unredacted form . . . on September 7, 2017."  Privilege Log, Doc. No. 50 (District's Response).  This voluntary disclosure waived the deliberative process privilege for Document 50.  *See In re Sealed Case*, 121 F.3d at 741–42.

### C.    Application of the Privilege

The Court next considers whether the deliberative process privilege protects the documents the District has redacted and withheld.  The disputed documents encompass four categories of records: (1) minutes from a July 22, 2013 Task Force meeting (Document 1),

Mynett Decl. ¶ 6; (2) drafts of the Task Force's report (Documents 2, 3–6, 32)[10], *id.* ¶ 7; (3) emails between Task Force members (Documents 18, 32, 35–39), *id.* ¶ 8;[11] and (4) emails between then-DOC Director Tom Faust and Christopher Murphy, Chief of Staff to Mayor Vincent Gray (Document 57), *id.* ¶ 10.[12] The following analysis addresses whether the documents are predecisional and deliberative, and whether they have been adopted as formal agency policy and thereby lose the privilege protection. *See In re Anthem*, 236 F. Supp. 3d at 159.

### 1. *Whether the Redacted or Withheld Documents Qualify for the Privilege*

#### a. <u>Predecisional</u>[13]

First, the documents are predecisional. Ms. Mynett's declaration indicates that she reviewed drafts of the meeting minutes, drafts of the Task Force's report, and emails between the Task Force members, and that the redacted information and documents are "provisional and not yet adopted as agency policy." Mynett Decl. ¶¶ 6–9. In addition, "[a]t the time the draft minutes were prepared, the Task Force had not yet adopted recommendations and accordingly DOC had not yet considered and decided which policy changes to adopt." *Id.* ¶ 9; *see also Nat'l Sec. Archive*, 752 F.3d at 463 ("To be pre-decisional, the communication . . . must have occurred

---

[10]   Although Ms. Mynett's declaration includes Document 50 in this category, the Court has determined that the District waived the privilege for this document.

[11]   Although Ms. Mynett's declaration includes Document 16, the Privilege Log shows that Ms. Mannina objects only to the attorney-client privilege designation on this document. Accordingly, the applicability of the deliberative process privilege to Document 16 is not before the Court. *See also supra* n.9. In addition, although Ms. Mynett's declaration includes Documents 35–39, as earlier discussed, the Court finds these to be outside the scope of Rule 37.

[12]   As discussed *supra*, the Court declines to consider Documents 53, and 80 through 96, which are emails addressed in Ms. Stewart-Ponder's declaration. *See* Stewart-Ponder Decl. ¶ 5; *supra* Part I.

[13]   This analysis applies to Documents 1–6, 18, 32, 35–37, 57. Ms. Mannina challenges whether these documents are predecisional. *See* Privilege Log (Code for Objections).

before any final agency decision on the relevant matter.").  Further, the July 2013 emails sent between then-DOC Director Tom Faust and Christopher Murphy, Chief of Staff to then-D.C. Mayor Vincent Gray, were also predecisional because "[a]t the time these emails were written, the District had not decided whether to advocate for the proposed policy."  Mynett Decl. ¶ 10.

Ms. Mannina challenges the predecisional nature of nearly every document that the District has redacted or withheld.  *See generally* Privilege Log (Code for Objections).  Ms. Mannina appears to argue that several of these documents are not predecisional because the District did not reference a specific policy decision.  *See id.*, Doc. Nos. 1–6, 18, 32, 35–37, 57 (entries noting Objection 6 to deliberative process privilege).  "[T]o approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed."  *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998) (quoting *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 585) (internal quotation marks omitted).  Although "a document need not contribute to a single, discrete decision," an agency must "identify[ ] the decisionmaking process to which [the document] contributed."  *Nat'l Sec. Archive*, 752 F.3d at 466 (alteration in original) (internal quotation marks and citation omitted); *see also Sears*, 421 U.S. at 151 n.18.  Accordingly, "[t]he agency bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process."  *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)), *opinion vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984).  The District has satisfied this requirement here.

Ms. Mynett's declaration indicates that the Task Force discussed policy proposals — in the meeting minutes, draft reports, and emails — related to suicides and suicide attempts in the

D.C. Jail, and that such discussions assisted the Task Force in determining what policy recommendations to make for the D.C. Jail. *See* Mynett Decl. ¶ 6, 9. Moreover, the unredacted and released portions of Document 1 clearly reveal the policy purpose and objective of the Task Force. Likewise, the privilege log indicates that the July 2013 email exchange between Director Faust and Chief of Staff Murphy covered "plans to review suicide prevention protocols within DOC," and that the redacted portion covered a "policy proposal." Privilege Log, Doc. No. 57 (Description column). Ms. Mynett's declaration further elaborates that the emails "contain policy suggestions pertaining to local courts." Mynett Decl. ¶ 10. The unredacted portions of Document 57 also demonstrate that these emails included information regarding the genesis of the Task Force. *See* Doc. No. 57. Accordingly, the District has satisfactorily "establish[ed] the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Paisley*, 712 F.2d at 698.

Ms. Mannina also argues that inter-agency input "is not pre-decisional." Privilege Log, Doc. No. 36 (Mannina's Objection). To the contrary, "[t]he deliberative process privilege protects from disclosure inter– and intra–agency communications and documents generated before a final decision." *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 14 (D.D.C. 1997).[14] The deliberative process privilege seeks to protect aspects of the "process by which governmental decisions and policies are formulated," *Klamath*, 532 U.S. at 8, and communications from interested stakeholders or inter-agency partners may be part of the decision-making process. Accordingly, to the extent that Ms. Mannina bases her objections on

---

[14] Much of the case law regarding the deliberative process privilege has developed in the context of Freedom of Information Act ("FOIA") litigation. FOIA Exemption 5 expressly exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5)

the fact that redacted information or documents originated from one of DOC's inter-agency partners, her argument fails.

Finally, Ms. Mannina's general, conclusory denial that documents are predecisional does not overcome Ms. Mynett's testimony. The pertinent emails, minutes, and documents predate final action and are predecisional. *See Nat'l Sec. Archive*, 752 F.3d at 463.

b. Deliberative[15]

Second, the disputed redactions and withheld documents are deliberative. Ms. Mynett has explained that the redacted and withheld material reflects communications and documents that "helped the Task Force decide which policy changes they would recommend for implementation at the DC Jail." Mynett Decl. ¶ 9. Thus the documents are inherently deliberative, *i.e.*, "communication[s] . . . intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive*, 752 F.3d at 463. The Court's *in camera* review of the communication between Mr. Faust and Mr. Murphy (Document 57) confirms that the redacted information also is deliberative. *See Huthnance*, 268 F.R.D. at 123 (noting that "the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." (internal quotation marks omitted) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).

Ms. Mannina contends that several documents — the documents reflecting July 22, 2013 meeting minutes, the drafts of the task force report, and certain documents categorized as emails between the Task Force — are "Factual, not deliberative." *See* Privilege Log (Key and Code for Objections). The District asserts that it released factual information. *See* Def.'s Opp'n at 8.

---

[15] This analysis applies to Documents 1–6, 18, 32, 35. Ms. Mannina challenges whether these documents are deliberative. *See* Privilege Log (Code for Objections).

Under the deliberative process privilege, "factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt." *Petroleum Info. Corp.,* 976 F.2d at 1434; *see In re Sealed Case*, 121 F.3d at 737. The D.C. Circuit employs a "functional approach" to determine whether information is factual or embodies an opinion and considers whether "the selection or organization of facts is part of an agency's deliberative process." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 164–65 (D.D.C. 2017) (internal quotation marks omitted) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)). The privilege shields factual information if it "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d at 737. "This is so because the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 136 (D.D.C. 2013).

The Court has applied those principles to determine whether the District improperly withheld factual material, and concludes as follows:

- Document 1 — In the privilege log, the District states that factual information was produced and that redactions were "restricted to a section of the document titled 'Longer-Term Suicide Prevention Strategies Undergoing Consideration." Privilege Log, Doc. 1 (District's Response). The Court's *in camera* review of Document 1 is consistent with the District's representations.

- Document 2 — The Court has seen at least two different redacted versions of this document, including as an attachment to an earlier filed Joint Status Report from Plaintiff (ECF No. 48).[16] Based on the Court's *in camera* review of Document 2, the redacted version provided as Exhibit B1 to the status report properly redacts

---

[16] Ms. Mannina provided a version of Document 2 as an attachment to the Joint Status Report filed by parties. *See* Joint Status Report [ECF No. 48], Ex. B1, ECF No. 52-3 (filed under seal) (Bates No. DC-1.15-cv-00931-012533–12537).

information as deliberative process privileged, including factual information, that "is so inextricably intertwined with the deliberative sections," that if revealed, would "reveal the government's deliberations." *In re Sealed Case*, 121 F.3d at 737; *Mapother*, 3 F.3d at 1537–38.

- Documents 3–6, 32[17] — The District asserts that "[r]edacted material is either evaluative discussion of recent suicides in the DC Jail or included in a section titled 'Longer Term Suicide Prevention Strategies Undergoing Consideration.'" Privilege Log, Doc. No. 3 (District's Response). The Court's *in camera* review indicates that most of the redactions are consistent with this representation. However, the District shall release the two sentences on Document 3 that begin on the last line of page 2 of 12 from "The National" and ends with "accommodation" in line 4 at the top of page 3 of 12, and shall also release the corresponding text in Documents 4–6 and 32.

- Document 18 — The District asserts that redacted material "proposes policy options for suicide prevention that were still under consideration at the time." Privilege Log, Doc. No. 18 (Description column). The Court has reviewed the document *in camera* and the redaction properly covers deliberative information.

  Although the Privilege Log indicates that this document was withheld in full, the copy of Document 18 provided for *in camera* review and the District's privilege log description of redacted material otherwise indicate that Document 18 was produced in redacted form. In addition, the District's Response in Column L, states that Document 18 "is entirely included within" a produced document and provides Bates ranges. It is unclear from the Privilege Log whether this means that Document 18 was produced in full within that production or with redactions. Moreover, as the Court does not have a copy of the other produced document referenced, the undersigned has no means to evaluate the District's statement. Accordingly, by no later than May 13, 2019 the District shall certify to the Court whether it has previously produced in full Document 18; whether it had been produced in the form provided for *in camera* review; and/or if it had been produced in some alternate form. If the District has previously produced Document 18 in full, then it would be deemed to have waived the privilege for Document 18. *See supra* Part III.B.2 (setting forth analysis for waiver of privilege). If the District produced Document 18 in the redacted form provided for *in camera* review, then the above analysis stands. Lastly, if the District produced Document 18 in some other form, the District shall submit a copy of Document 18 and the other produced document for *in camera* review, by no later than May 13, 2019.

---

[17]  Documents 3 through 6, and Document 32, are duplicates of the same document. *See* Privilege Log, Doc. No. 3–6, 32. Document 3 is Bates No. DC-1.15-cv-00931-012588 to 012599. *See* Privilege Log. Column L of the Privilege Log, which provides the District's Response, notes that Documents 4 through 6, and 32, are duplicates of this Bates range. *See id.*

- <u>Document 35</u> — The District indicates that this email contains "recommendations on suicide prevention policy and practices in DC Jail" that "were in the process of being assessed and developed." Privilege Log, Doc. No. 35 (Description column). Based on the Court's *in camera* review, this information is properly redacted as deliberative. Moreover, the unredacted header of "Issues currently being assessed/developed" reflects the deliberative nature of the information redacted.

  **2.**  ***Whether the District has Lost its Ability to Assert the Privilege by Adopting the Policy Recommended in the Deliberative Documents?***[18]

  Ms. Mannina contends that the deliberative process privilege does not apply because the withheld and redacted documents formed the basis for a policy that the Department of Corrections ultimately adopted. Pl.'s Reply at 5–6, 7–8 (arguing that "every document relates to an adopted policy" because Ms. Mynett testified in her deposition that all of the recommendations were adopted). "[E]ven if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866; *see also Pension Benefit Guar. Corp.*, 222 F. Supp. 3d at 44 ("If Treasury implemented the opinions or analyses contained in these communications into its final policies, the documents would not be protected from disclosure under the deliberative process privilege."). Ms. Mannina interprets that to mean that to be protected by the deliberative process privilege, the document "*must also be at variance with the policy that the agency adopts*." Pl.'s Reply at 5 (citing *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 60 (D.D.C. 2014)).

  Precedent does not support Ms. Mannina's belief that only documents contrary to later-adopted policy are protected by the deliberative process privilege. An agency's adoption of a policy does not cause all deliberative documents consistent with that policy to automatically lose

---

  [18] This analysis applies to Documents 1–6, 18, 32, 35–39, 57. Ms. Mannina asserts this objection for all disputed documents asserting the deliberative process privilege. *See* Privilege Log (Code for Objections).

the protection of the deliberative process privilege. Instead, courts have narrowly applied this privilege exception only to those documents that contain the precise language and policy that the agency ultimately adopted or that present the reasoning the agency expressly relied upon when it adopted its policy. *See Judicial Watch*, 847 F.3d at 739 ("To adopt a deliberative document, it is not enough for an agency to make vague or equivocal statements implying that a position presented in a deliberative document has merit; instead, the agency must make an '*express*[ ]' choice to use a deliberative document as a source of agency guidance.") (alteration in original) (quoting *Sears*, 421 U.S. at 161); *United States v. Philip Morris USA Inc.*, 218 F.R.D. 312, 318 (D.D.C. 2003) ("Neither the Supreme Court nor this Circuit has ever required disclosure of agency documents which were merely 'used' by a decisionmaker or 'reflect[ed] announced agency policy,' on the basis that they had been informally adopted."); *Heffernan*, 317 F. Supp. 3d at 122–125. Thus, absent proof that the District expressly adopted the deliberative documents, the privilege continues to apply.

With respect to the documents disputed here, Ms. Mynett unequivocally states that "[t]he proposals discussed . . . are provisional and not yet adopted as agency policy." Mynett Decl. ¶ 9. The District also asserts that it released documents containing recommended changes that were implemented. *See* Def.'s Opp'n at 8. Although Ms. Mannina provides examples of some changes that allegedly have occurred, *see* Pl.'s Mem. at 12–13, she has not identified specific policies that expressly adopt the statements or reasoning from predecisional deliberative documents. Therefore, she has not rebutted Ms. Mynett's declaration and fails to demonstrate that the deliberative process privilege has been lost. *See Judicial Watch*, 847 F.3d at 739; *Afshar v. Dep't of State*, 702 F.2d 1125, 1143 n.22 (D.C. Cir. 1983); *Philip Morris*, 218 F.R.D. at 318.

### 3. Whether Ms. Mannina's Need for the Documents Outweighs the Public Interest in Non-Disclosure

Finally, Ms. Mannina argues that her need for the withheld and redacted documents overcomes the privilege. The deliberative process privilege is qualified, and documents that reflect agency officials' deliberative opinions may be disclosed if "the private need for disclosure outweighs the public interest in non-disclosure." *In re Anthem*, 236 F. Supp. 3d at 159 (citing *In re Sealed Case*, 121 F.3d at 737). When making that assessment, courts

> balance the competing interests on a flexible, case by case, ad hoc basis, considering such factors as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation or investigation, the harm that could flow from disclosure, the possibility of future timidity by government employees [should the materials be disclosed], and whether there is reason to believe that the documents would shed light on government misconduct.

*Comm. on Oversight and Gov't Reform v. Lynch*, 156 F. Supp. 3d 101, 112–13 (D.D.C. 2016); *see also In re Anthem*, 236 F. Supp. 3d at 159. "The party seeking the documents bears the burden of demonstrating that the balance of interests tips in his or her favor." *In re Anthem*, 236 F. Supp. 3d at 159.

Ms. Mannina fails to articulate a need for the disputed documents that outweighs the public interest in non-disclosure. Ms. Mannina argues generally that the withheld and redacted documents contain "evidence [that] is highly relevant and unavailable elsewhere." Pl.'s Mem. at 14. Although documents regarding the Suicide Task Force likely contain information relevant to Ms. Mannina's claims, Ms. Mannina has not demonstrated that she is unable to obtain the relevant evidence through other means. *See* FED. R. CIV. P. 26(b)(1). Ms. Mannina deposed "multiple witnesses who were directly involved in the investigation of Mannina's suicide and in changes in operational, custodial, and medical practices to improve assessment and treatment of inmates or detainees at risk of suicide." Def.'s Opp'n at 9 & n.6. According to the District,

these individuals included Ben Collins, the DOC investigator who prepared the DOC report on Mr. Mannina's suicide; Wanda Patten, Mr. Collins's former supervisor and now-DOC Interim Deputy Director of Operations; Beth Mynett, DOC Health Administrator; and Diana Lapp, Unity Healthcare's Deputy Chief Medical Officer. *Id.* at 9 n.6. The produced and redacted July 22, 2013 Task Force meeting minutes show that Ms. Patten, Ms. Mynett, and Ms. Lapp attended and participated in that meeting; accordingly, they should be knowledgeable about that particular meeting and other relevant Task Force discussions. *See* Doc. No. 2 (produced in redacted form to Plaintiff). Thus, to the extent that Ms. Mannina has questions about the Task Force or its meetings, she could have explored the topic through depositions.

Ms. Mannina contends that depositions and other sources would be insufficient because she needs the underlying documents and the witnesses' prior statements to question the deponents, and that other sources lack the detail that she deems essential to prove her case. Pl.'s Reply at 7. As an example, Ms. Mannina contends that in the Mynett deposition, documents would have been helpful to "challenge her faulty memory and extremely vague and unhelpful responses." *Id.* However, Ms. Mannina offers nothing more than speculation that such "prior statements and opinions" would elicit different responses from the individuals deposed. *Id.*; *cf. Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (finding no abuse of discretion in denying discovery where plaintiff sought discovery as "an opportunity to test and elaborate the affidavit testimony already entered" but failed to provide a "reason to question the veracity of affiants"). That is insufficient to overcome the deliberative process privilege.

## IV.   Self-Evaluative Privilege

The District also has asserted the self-evaluative privilege, which it mistakenly characterizes as a subset of the deliberative process privilege.[19]  *See* Def.'s Opp'n at 7.  Ms. Mannina contends that the District cannot assert the self-evaluative privilege because it failed to include it on the privilege log and first raised the privilege in its opposition memorandum.  *See* Pl.'s Reply at 6.  The Court has already found that the deliberative process privilege protects the withheld and redacted documents — with the exception of the Court's identification of the properly redacted version of Document 2 and the release of two sentences of non-deliberative factual information in Document 3.  *See supra* Part III.C.1.b.  Given that the self-evaluative privilege "does not protect purely factual material appearing alongside self-critical analysis," it would not protect the line of factual information that was outside the scope of the deliberative process privilege.  *English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 11 (D.D.C. 2017) (internal quotation marks omitted) (quoting *Felder*, 153 F. Supp. 3d at 225).  It is unnecessary for the Court to determine whether the self-evaluative privilege applies to the remaining disputed redactions and withheld documents because the deliberative process privilege shields them from disclosure.  Accordingly, the Court will not reach this issue.

## V.   Attorney-Client Privilege

Ms. Mannina also challenges many of the District's assertions of attorney-client privilege.  *See generally* Privilege Log.  As the party asserting the privilege, the District bears the

---

[19] The self-evaluative privilege is distinct from the deliberative process privilege.  *See FTC v. TRW, Inc.*, 628 F.2d 207, 210 (D.C. Cir. 1980) (discussing the "roots" of the self-evaluative privilege and describing the creation of "a qualified privilege against disclosure was fashioned to apply in all but 'extraordinary circumstances'" (quoting *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249, 251 (D.D.C 1970)).  Thus, the District's contention that the deliberative process privilege includes the self-evaluative privilege is erroneous.  *See* Def.'s Opp'n at 7–8.

burden of proving "with reasonable certainty" that it applies and must provide sufficient evidence to carry that burden. *See In re Subpoena Duces Tecum Issued to CFTC WD Energy Servs. Inc.*, 439 F.3d 740, 750–51 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *FTC v. TRW*, 628 F.2d at 213); *FTC v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 16 (D.D.C. 2016) (noting that party asserting attorney client privilege must "'adduce competent evidence in support of its claims,' something beyond 'conclusory statements, generalized assertions, and unsworn averments of its counsel'" (quoting *In re Veiga*, 746 F. Supp. 2d 27, 33–34 (D.D.C. 2010))) *aff'd*, 892 F.3d 1264 (D.C. Cir. 2018). Ms. Mannina presents several general arguments in support of her challenge, asserting that: (1) the District improperly asserts the privilege for documents where Ms. Amato, the DOC's General Counsel, was merely copied, Pl.'s Mem. at 15; (2) Ms. Amato's participation in Task Force meetings as "senior policy advisor" precludes the attorney-client privilege from applying to documents pertaining to those meetings, *id.* at 16; and (3) communications that pre-date June 2013 and the filing of the complaint in this matter could not have involved the provision of legal advice. *See id.*

The attorney-client privilege exists "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The privilege "is narrowly construed and is limited to those situations in which its purposes will be served." *Coastal States*, 617 F.2d at 862; *see also In re Lindsey*, 158 F.3d at 1272 (stating that the attorney-client privilege shall be "strictly confined within the narrowest possible limits consistent with the logic of its principle" (internal quotation marks and citation omitted)); *In re Sealed Case*, 676 F.2d 793, 807 n.44 (D.C. Cir. 1982). The attorney-client privilege "protects confidential communications made between clients and their attorneys when the communications

are for the purpose of securing legal advice" or providing legal advice. *In re Lindsey*, 158 F.3d at 1267 (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)); *see also In re Kellogg Brown & Root, Inc.* (*KBR I*), 756 F.3d 754, 757 (D.C. Cir. 2014). The provision or receipt of legal advice need not be the *sole* purpose of the communication in order to trigger the privilege. Instead, this Circuit applies the "primary purpose test," which examines whether "one of the significant purposes" of the communication was "to obtain or provide legal advice." *KBR I*, 756 F.3d at 757–60.

The attorney-client privilege also protects certain communications between an agency or in-house attorney and employees of the entity. *See Upjohn*, 449 U.S. at 389–94; *Boehringer Ingelheim Pharm.*, 180 F. Supp. 3d at 16 (observing that a lawyer's status as in-house counsel for a corporate entity "does not dilute the privilege" (internal quotation marks and citation omitted)); *Coastal States*, 617 F.2d at 281 (noting that it is "clear that an agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege"). Specifically, the attorney-client privilege applies provided that "[t]he communications at issue were made by [the company's] employees to counsel for [the company] acting as such, at the direction of corporate superiors in order to secure legal advice from counsel." *Upjohn*, 449 U.S. at 394 (footnote omitted); *In re Sealed Case*, 737 F.2d at 99; *see also Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000). "Similarly, when a government attorney 'act[s] more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply.'" *A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44, 48 (D.D.C. 2013) (alteration in original) (citation omitted). Accordingly, the entity seeking to assert the privilege must make "a clear showing" that the in-house counsel acted in a "professional legal capacity" rather than for a purpose "outside the

lawyer's sphere." *In re Sealed Case*, 737 F.2d at 99.  Under the "primary purpose test," the fact

that the communication also served a business purpose does not necessarily render the attorney-

client privilege inapplicable.  *KBR I*, 756 F.3d at 759–60.

In certain circumstances, the attorney-client privilege also may apply to communications

in which all the participants are non-attorneys.  If non-attorneys serve as "agents of attorneys in

internal investigations," the privilege extends to communications made by and to those agents

provided that the communications are made to secure or provide legal advice.  *Id.* at 758 (citing

*FTC v. TRW*, 628 F.2d at 212).

The Court has reviewed the challenged privilege assertions *in camera*, using the legal

framework set forth above.  The chart attached to the Court's Order issued on March 29, 2019

("AC Review Chart') contains the results of that review.[20]  *See* Order, Attach. A, ECF No. 118-1.

For the reasons identified above, the Court will not evaluate the District's assertion of the

attorney-client privilege to redact or withhold documents that were not responsive to Rule 34

discovery requests; accordingly, the AC Review Chart does not address Documents 33–34, 41,

45, 51–52, 67, 101–104.  *See supra* Part I (excluding these documents from the Court's analysis).

### VI.    Litigation Hold Letters, Preservation, and Allegations of Spoliation

Ms. Mannina also seeks to compel the District to produce litigation hold letters.  *See* Pl.'s

Mem. at 5–8, 18–20; Pl.'s Reply at 8–9.  In addition, Ms. Mannina, in her reply, raises issues

with a supplemental privilege log, preservation of documents, and spoliation.  *See* Pl.'s Reply at

9–12.  However, since the filing of this Motion, the Court set a separate briefing schedule for

Plaintiff to file a motion regarding alleged deficiencies in the District's litigation holds and

---

[20] The column labeled "Attorney-Client Privileged?" indicates whether the attorney-client privilege applies to the information redacted or document withheld; and the "Rationale" column provides the basis for the Court's conclusion.

preservation of records. *See* Order, ECF No. 94. As the issues raised in this Motion are encompassed in that separate briefing,[21] and other filings before the Court, the Court DENIES without prejudice Ms. Mannina's Motion to the extent it seeks to compel litigation hold letters and relief relating to alleged preservation issues and spoliation.

## VII.    Other Relief Requested

Finally, Ms. Mannina requests that the Court find that the District has waived all claims of privilege due to alleged "discovery misconduct." Pl.'s Mot. at 1. She further encourages the court to find such waiver if the Court determines in its *in camera* review that the District's non-disclosure of documents "demonstrates a similar pattern of wrongful conduct." Pl.'s Mem. at 21. First, Ms. Mannina provides no legal basis for her request to sanction the District with complete waiver of privileges. Second, as demonstrated by the Court's analysis above and in Attachment A to the Court's March 29, 2019 Order, the Court has found no egregious instances of non-disclosure. Rather, many of the portions of documents that the Court has ordered released have already been released in redacted form. If anything, this demonstrates sloppy document review practices, rather than a concerted effort or intent to withhold proper discovery from Plaintiff. Accordingly, and lacking a legal basis to evaluate Plaintiff's request, the Court DENIES Plaintiff's request to find that the District waived all privilege claims.

---

[21] The relevant filings are: Pl.'s Mot. Regarding Def.'s Failure to Preserve and Discover Evidence, and Spoliation of Evidence ("Pl.'s Mot. Regarding Evidence"), ECF No. 96; Def.'s Mem. in Opp'n to Pl.'s Mot. Regarding Evidence, ECF No. 101; Pl.'s Reply in Supp. of Mot. Regarding Evidence, ECF No. 107.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby GRANTS-IN-PART and DENIES-IN-PART

Plaintiff's Motion to Compel [ECF No. 83]. A separate Supplemental Order will accompany this

Memorandum Opinion.


Dated:  <u>May 6, 2019</u>

                                            ROBIN M. MERIWEATHER
                                            UNITED STATES MAGISTRATE JUDGE