# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VICTORIA MANNINA, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:15-cv-931 (KBJ/RMM) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## INTRODUCTION

This case arises from the suicide of Paul Mannina ("Mr. Mannina"); Plaintiff Victoria Mannina ("Ms. Mannina") brings this action as widow and representative of Mr. Mannina's estate. 2d Am. Compl., ECF No. 33 at ¶ 1. Ms. Mannina raises civil rights claims under 42 U.S.C. § 1983 and the Due Process Clause of the Fifth Amendment, and also raises tort claims including negligence and wrongful death. *See id.* at ¶¶ 36–54. This matter was referred to the undersigned for management of discovery. 10/27/2017 Min. Order.

Ms. Mannina filed a motion asking the Court to determine that Defendant the District of Columbia ("the District") failed to meet its obligation to preserve documents potentially relevant to this litigation. *See* Pl.'s Mot. Regarding Def.'s Failure to Preserve and Discover Evid., and Spoliation of Evid. ("Pl.'s Mot." or "the Motion"), ECF No. 96. Specifically, Ms. Mannina requested that the Court (1) declare that the District failed to preserve evidence; (2) find that the District is responsible for actual spoliation of evidence; and (3) direct the parties to brief the issue of appropriate sanctions. *Id.* at 3. The District opposed the Motion. Def.'s Mem. Opp'n Pl.'s "Mot. Regarding Def.'s Failure to Preserve and Discover Evid., and Spoliation of Evid."

("Def.'s Mem."), ECF No. 101. After considering the parties' briefing[1] and arguments made at the motion hearing, the Court GRANTED Ms. Mannina's Motion in a Memorandum Order issued September 30, 2019. Mem. Order, ECF No. 129. This Memorandum Opinion provides further explanation for the analysis underlying that ruling.

## BACKGROUND

### I. Factual Background[2]

On June 18, 2013, Mr. Mannina committed suicide while a prisoner in the District's custody. 2d Am. Compl., ECF No. 33 at ¶ 35. On August 1, 2013, Ms. Mannina sent a notice of claim, pursuant to D.C. Code § 12-309, advising the District of her intent to pursue a claim for Mr. Mannina's death. Pl.'s Mem. Supp. Mot. Regarding Def.'s Failure to Preserve and Discover Evid., and Spoliation of Evid. ("Pl.'s Mem.") at 6, ECF No. 96-1. On August 6, 2013, the District's Office of the Attorney General ("OAG") sent a litigation hold email to the District of Columbia Department of Corrections ("DOC"), directing DOC to preserve any evidence about four individuals who committed suicide at the D.C. Jail between November 2012 and August 2013, including Mr. Mannina. *Id.*; Not. Regarding Preservation Efforts, Ex. 1 (Summary Chart) at 1, ECF No. 91–2.

On June 17, 2015, Ms. Mannina filed a complaint against Muriel Bowser (Mayor of the District of Columbia), Karl Racine (Attorney General of the District of Columbia), and Thomas Faust (Director of DOC). Compl., ECF No. 1. On August 11, 2015, OAG sent a formal litigation hold letter to DOC, directing DOC to preserve all documents and information relating to Mr. Mannina's suicide and the allegations in the complaint. Def.'s Mem. at 6; Not. Regarding

---

[1] Pl.'s Mot.; Def.'s Mem.; Pl.'s Reply Supp. Mot. Regarding Def.'s Failure to Preserve and Discover Evid., and Spoliation of Evid. ("Pl.'s Reply"), ECF No. 107.
[2] Given the posture of the case, the Court relies on the facts alleged in the Complaint.

Preservation Efforts, Ex. 1 (Summary Chart) at 1, ECF No. 91–2. On December 1, 2016, OAG requested the Metropolitan Police Department's ("MPD's") arrest paperwork for Mr. Mannina and the report of MPD's investigation of his suicide. Not. Regarding Preservation Efforts, Ex. 1 (Summary Chart) at 1, ECF No. 91–2. On March 8, 2018, OAG sent a litigation hold letter to MPD, directing MPD to preserve any documents and records related to Ms. Mannina's Complaint. *Id.* at 2.

## II. Procedural Background

Ms. Mannina initially moved for sanctions on February 28, 2018. Mot. Sanctions, ECF No. 66. On September, 24, 2018, the Court denied that motion without prejudice because Ms. Mannina failed to include a Local Civil Rule 7(m) statement, and because it appeared that the parties had not conferred before Ms. Mannina filed her motion. Order, ECF No. 89. On October 16, 2018, at a discovery status conference, the Court invited Ms. Mannina to rebrief her spoliation-related motion. 10/16/2018 Hr'g Tr. at 31:24–33:9, ECF No. 109. The Court did not provide specific instructions on how to structure that motion, leaving it to Ms. Mannina to request relief as she saw fit. *Id.* at 33:3–9. Ms. Mannina subsequently filed the instant motion, requesting that the Court (1) declare that the District failed to preserve evidence; (2) find that the District is responsible for actual spoliation of evidence; and (3) direct the parties to brief the issue of appropriate sanctions. Pl.'s Mot. at 3. The District opposed, and Ms. Mannina filed a reply. *See* Def.'s Mem.; Pl.'s Reply. After the motion was fully briefed, the Court heard the parties' oral arguments on the motion. *See* 1/30/2019 Hr'g Tr., ECF No. 112.

## LEGAL STANDARD

This Court has inherent power to sanction abuses of the judicial process, including discovery abuses. *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474–75 (D.C. Cir. 1995).

3

A court must find three elements before awarding spoliation sanctions:

> (1) The party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) [t]he destruction or loss was accompanied by a 'culpable state of mind;' [and] (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

*Chen v. District of Columbia*, 839 F. Supp. 2d 7, 13 (D.D.C. 2011) (citing *Mazloum v. D.C. Metro. Police Dep't.,* 530 F. Supp. 2d 282, 291 (D.D.C. 2008)).[3] The third element is not relevant to Ms. Mannina's motion, as it pertains only to the appropriate sanction. The standard of proof for the award of issue-related sanctions, such as the preclusion of evidence or adverse inference instructions, is a preponderance of the evidence. *Shepherd,* 62 F.3d at 1478. The standard of proof for the award of penal sanctions, such as fines, fees, and dismissal, is clear and convincing evidence. *Id.*

---

[3] Some district courts within this Circuit have found that this three-factor standard is specific to adverse inference sanctions, and that another standard may be appropriate for punitive sanctions like dismissal. *See, e.g., Landmark Legal Found. v. EPA,* 82 F. Supp. 3d 211, 219–20 (D.D.C. 2015); *Clarke v. WMATA,* 904 F. Supp. 2d 11, 21 (D.D.C. 2012) (citing *Webb v. District of Columbia,* 146 F.3d 964, 971 (D.C. Cir. 1998)). Other courts, however, have applied the same three-factor standard to punitive sanctions. *See, e.g., Borum v. Brentwood Village, LLC,* 332 F.R.D. 38, 44 (D.D.C. 2019). Other circuits have also applied the same three-factor test to both types of spoliation sanctions. *See, e.g., Zubulake v. UBS Warburg, LLC* ("*Zubulake IV*"), 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (applying three-factor standard to "[a] party seeking an adverse inference instruction *(or other sanctions)*") (emphasis added); *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 520–21 & n. 31 (D. Md. 2010) (collecting cases). Regardless, before awarding any spoliation sanctions, the Court must first find that spoliation occurred—the sole focus of Ms. Mannina's Motion. Thus, the Court saves for another day the issue of whether the same standard applies to both adverse inference sanctions and punitive sanctions.

## DISCUSSION

**I. The Court May Consider the Instant Motion**

*A. Local Civil Rule 7(m) Permits, But Does Not Require, Dismissal*

The District asserts in passing that the Motion should be denied because Ms. Mannina failed to meet and confer as required by Local Civil Rule 7(m). *See* Def.'s Mem. at 4 n.1. Ms. Mannina asserts that "the [Local Civil] Rule 7(m) meet and confer requirements do not apply to this Motion" because Ms. Mannina raised the same issues in prior motions, the parties argued the same issues at the October 16, 2018 status conference, and the Court "ordered" Ms. Mannina to file this Motion. *See* Pl.'s Mot. at 3.

Even if Ms. Mannina failed to meet and confer, the Court will consider the merits of her Motion. *See Equal Rights Ctr. v. Post Prop., Inc.,* 246 F.R.D. 29, 32 (D.D.C. 2007) (granting-in-part a motion to compel despite failure to meet and confer, and admonishing the parties "to be mindful of their meet and confer obligations as the litigation progresses and make a good faith effort to resolve disputes before requesting the assistance of the Court"); *see also Walker v. District of Columbia*, 317 F.R.D. 600, 605 (D.D.C. 2016) (adjudicating motion to compel but limiting recovery of fees). In this case, Ms. Mannina's failure to meet and confer did not prejudice the District's ability to brief its opposition, as Ms. Mannina has repeatedly informed the District of her objections to the District's preservation efforts. Indeed, the District has acknowledged being "aware of Plaintiff's generalized complaints" and the "specific concerns about the pieces of evidence she discusses in her motion." *See* Def.'s Mem. at 4 n.1. Although the District claims it did not have notice of the relief sought, Ms. Mannina's Motion does not seek any remedies, but rather asks that the parties brief that issue later. *See* Pl.'s Mot. at 3.[4]

---

[4] The Court further reminds the parties that the meet and confer requirement under Local

### B. The Court May Rule on the District's Alleged Failure to Preserve Relevant Records While Deferring a Ruling on the Appropriate Remedy

The District argues that Ms. Mannina has improperly asked the Court to bifurcate the spoliation issues and resolve the question of the District's alleged failure to preserve records separately before evaluating prejudice or the appropriate remedy. *See* Def.'s Mem. at 13–14. The District argues that, because the issue of prejudice may be dispositive, Ms. Mannina's Motion conflicts with the prohibition against advisory opinions. *Id.* at 13 (citing *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 678 (2016) (Roberts, C.J., dissenting)). Ms. Mannina replies that her Motion is consistent with the Court's instructions, and that determining liability before determining remedies is efficient and logical. Pl.'s Reply at 7.

Ms. Mannina correctly cites to the Court's instructions. At the October 16, 2018 hearing, Ms. Mannina's counsel specifically asked whether Ms. Mannina may "file a motion with respect to the hold harm—to the litigation hold letters and then, *depending on the conclusion there . . .* file a motion on spoliation," or whether Ms. Mannina should file "the whole spoliation memo." 10/16/18 Hr'g Tr. 32:18–24, ECF No. 109 (emphasis added). The Court responded that Ms. Mannina's motion "may be a motion for sanctions" or may better be described as a "motion regarding the alleged deficiencies in the . . . litigation holds." *Id.* at 33:3–9. Thus, the Court left open the door for Ms. Mannina to present her motion as she saw fit, including by bifurcating liability and remedies.

---

Civil Rule 7(m) is not only a notice requirement. The Rule encourages parties to narrow the areas of dispute and reduce the Court's workload. *See, e.g., Ellipso, Inc. v. Mann,* 460 F. Supp. 2d 99, 102 (D.D.C. 2006) ("The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court."). Especially where, as here, the Court does not "order" briefing on specific issues, but rather permits briefing as a party sees fit, the meet and confer requirement encourages parties to focus their arguments on the most relevant, disputed issues.

Nor does the lack of prejudice alleged by the District force this Court to issue an "advisory opinion." First, the Court cannot determine at this time whether there is a lack of prejudice, as Ms. Mannina has not briefed the issue of prejudice. *See, e.g., Robles v. Kerry,* 74 F. Supp. 3d 254, 262 (D.D.C. 2014) (declining to decide sovereign immunity issues based on complexity and insufficient briefing). The next logical step would be for the Court to order supplemental briefing on the issue of prejudice—effectively achieving the same result as Ms. Mannina's plan. *See, e.g., Huber v. United States*, 14-cv-1380 (TSC), 2019 WL 1614981, at *1 (D.D.C. April 16, 2019) ("[B]ecause the parties submitted insufficient evidence and briefings on the issue of damages, the court orders the parties to submit supplemental briefing on this issue.").

Second, the District's reliance on *Campbell-Ewald* is misplaced. In that case, the Court held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald,* 136 S. Ct. at 672. Thus, even if the District agreed to spoliation sanctions (which it does not), Ms. Mannina's Motion would not be mooted unless and until Ms. Mannina accepted the District's offer. In sum, Ms. Mannina's Motion asks the Court to adjudicate a live controversy regarding the legal rights and obligations of adverse parties.

## II. The District Has Failed to Preserve Evidence in This Action

Ms. Mannina points to three specific instances of destroyed evidence: (1) a videotaped interview with Hassan Pye ("Pye Video"), Mr. Mannina's cellmate at the time of his death and the only witness to his death; (2) an MPD file that accompanied Mr. Mannina when he was transferred from Montgomery County to the District; and (3) records from the Department of Behavioral Health ("DBH Records"), including a referral to DBH made by Pretrial Services Agency caseworker Sheena Baynes Bagley. Pl.'s Mem. at 15–17. Although Ms. Mannina asserts that other evidence may have been destroyed, she does not identify that other evidence

with any specificity. Thus, the Court focuses its analysis only on whether the Pye Video, MPD Fugitive File, and DBH Records were destroyed.

*A. The DBH Records Were Not Destroyed Because They Have Not Been Shown to Exist*

To show that evidence was destroyed, Ms. Mannina must first show that the evidence existed. *See, e.g., Mahaffey v. Marriott Intern., Inc.,* 898 F. Supp. 2d 54, 61 (D.D.C. 2012) ("Accordingly, if no such evidence was created, it could not have been destroyed."). The District disputes whether DBH Records were destroyed insofar as the District asserts there is no evidence that such records ever existed. Def.'s Mem. at 7. Ms. Mannina asks the Court to infer the existence of DBH Records from Ms. Bagley's deposition testimony. Specifically, Ms. Bagley testified that a department policy required her to refer Mr. Mannina to DBH for treatment, that she believed she likely would have done so, and that the applicable procedures would have required that she prepare a Specialized Supervision Screening Form in connection with the referral. Pl.'s Mem., Ex. 6 (Bagley Dep.) at 52:11–53:16, 54:20–55:12, ECF No. 96-7.

Ms. Bagley's testimony that a record *should* exist is not, in itself, sufficient for this Court to conclude such a record *did* exist. The scant evidence here is analogous to *Mahaffey*. 898 F. Supp. 2d 54. In that case, the court declined to award sanctions for the alleged spoliation of investigation records. The plaintiff argued that the defendant's "procedures and testimony [indicated] that . . . an investigation *should have* been commenced." *Mahaffey,* 898 F. Supp. 2d at 60–61 (emphasis in original). Neither the plaintiff nor the defendant, however, could locate the investigation records or witnesses who recalled creating such documents. *Id.* at 60. The court held that, without evidence that the investigation records were created, there was no evidence that the investigation records were destroyed. *Id.* at 61 (citing *Rude v. Dancing Crab at Washington Harbour,* 245 F.R.D. 18, 23 (D.D.C. 2007)). Other courts have similarly declined to

8

award sanctions based solely on allegations that records *should* have been made. *See Rude,* 245 F.R.D. at 23 (no sanctions for spoliation of security tapes where plaintiff failed to show security cameras were operational or in use); *Figueroa v. Tillerson,* 289 F. Supp. 3d 212, 226 (D.D.C. 2018) ("The simple fact that the Department's policy was for selection board members to discard their notes says nothing about whether such notes were kept to begin with."), *aff'd in part, rev'd in part, vacated in part sub nom. Figueroa v. Pompeo,* 923 F.3d 1078 (D.C. Cir. 2019) (declining to address spoliation on appeal).

Similarly, Ms. Mannina fails to identify any documents or witness testimony showing that Ms. Bagley actually referred Mr. Mannina to DBH and created records regarding that referral. Ms. Bagley does not recall referring Mr. Mannina for treatment. Def.'s Mem., Ex. 10 (Bagley Dep.) at 15:21–16:2, ECF No. 101-11. Ms. Bagley cannot say whether there would be a record of the referral. Pl.'s Mem., Ex. 6 (Bagley Dep.) at 54:11–18, ECF No. 96-7. And Ms. Bagley is unaware of anyone else creating a record of a referral. Def.'s Mem., Ex. 10 (Bagley Dep.) at 18:5–9, ECF No. 101-11. Furthermore, the District, its contractor Pathways to Housing, and Saint Elizabeth's Hospital have searched their records and found no indication that a referral was ever made. Def.'s Mem. 7–8; Def.'s Mem., Ex. 2 (Kwevie Decl.) at ¶ 6, ECF No. 101-3; 1/30/2019 Hr'g Tr. 22:15–21, ECF No. 112. Nor has Ms. Mannina located references to the supposed referral in other records. *See Zubulake v. UBS Warburg LLC* ("*Zubulake V*")*,* 229 F.R.D. 422, 426 (S.D.N.Y. 2004) (inferring existence of email based on "oblique references to it in other correspondence"). Because Ms. Mannina cannot show that DBH Records were created, the Court cannot conclude that DBH Records were destroyed.

B. *The Pye Video and MPD Fugitive File Were Destroyed*

In contrast, the District does not dispute that it no longer possesses the Pye Video. Def.'s Mem. at 4. Nor does it dispute that it no longer possesses at least some MPD files, specifically a "MPD Fugitive Unit file."[5] *Id.* Based on the District's admissions, the Court finds that the District has failed to preserve the Pye Video and the MPD Fugitive Unit file.

**III. The District is Responsible for the Spoliation of Evidence**

"It goes without saying that a party can only be sanctioned for destroying evidence if it had a duty to preserve it." *Zubulake IV,* 220 F.R.D. at 216. Thus, to find that the District "is responsible for the spoliation of evidence," the Court must first find that the District had a duty to preserve such evidence when it was destroyed, and the destruction was accompanied by a culpable state of mind. *See, e.g., Chen*, 839 F. Supp. 2d at 13. The Court limits its spoliation analysis to the Pye Video and the MPD Fugitive Unit file. Because the Court cannot infer the existence or destruction of other records, including the DBH Records, the Court does not address whether the District's duty to preserve extended to those hypothetical records.

A. *The District's Duty to Preserve Began in August 2013*

Ms. Mannina asserts that the District had a duty to preserve evidence as early as August 1, 2013, when Ms. Mannina sent her Notice of Claim, or at the very least by June 17, 2015, when Ms. Mannina filed her Complaint. Pl.'s Mem. at 6–8; Pl.'s Reply at 4. The District responds

---

[5] In the District's view, there are two sets of documents that accompanied Mr. Mannina when he was transferred—one in Mr. Mannina's personal possession and one in the District's possession. *See* Def.'s Mem. at 9. Ms. Mannina's focus seems to be on the file in the District's possession, which was also at issue in MPD Sergeant Ernest Cole's deposition testimony. *See* Pl.'s Mem. 16. The District does not dispute that it destroyed this "Fugitive Unit file." The District asserts that it produced the personal file to Ms. Mannina. Def.'s Mem. at 9. Thus, while the Court finds that the District has failed to preserve Mr. Mannina's "Fugitive Unit file," the Court withholds judgment on whether the District also failed to preserve Mr. Mannina's personal file.

that "Plaintiff's first two complaints in this action contained nothing to put the District on notice that Plaintiff believed that MPD's actions were either negligent or constitutionally deficient." Def.'s Mem. at 7; *see also* Not. Regarding Preservation Efforts at 2, ECF No. 91 ("Plaintiff's initial Complaint and her First Amended Complaint did not put the District on notice that she alleged that MPD was at fault in failing to prevent Mr. Mannina's suicide.").

The duty to preserve begins "when a party *should have known* that the evidence may be relevant to future litigation." *Gerlich v. U.S. Dep't of Justice,* 711 F.3d 161, 170–71 (D.C. Cir. 2013) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)) (emphasis in original). The District's duty to preserve evidence relevant to Ms. Mannina's claims began in August 2013, when Ms. Mannina's Notice of Claim made litigation "reasonably foreseeable." *See id.* Indeed, the D.C. Code requires a plaintiff to file a timely Notice of Claim so that the District has "*reasonable notice* of an accident so that the facts may be ascertained and, if possible, the claim adjusted." *Shehyn v. District of Columbia,* 392 A.2d 1008, 1013 (D.C. 1978) (emphasis added); *see also Cornish v. District of Columbia,* 67 F. Supp. 3d 345, 368 (D.D.C. 2014) ("[T]he policy rationale underlying [D.C. Code] § 12-309 is to protect the District against unreasonable claims and to give reasonable notice to the District so that the facts underlying the claims may be ascertained and, if possible, deserving claims may be settled without litigation.").

Further, Ms. Mannina's Notice of Claim is sufficiently clear to explain the nature of her claims. *See* Compl., Ex. 2 (Notice of Claim), ECF No. 1. Specifically, Ms. Mannina alleged that "the City, and its agents, servants and employees, was negligent in assessing, monitoring, segregating and supervising Paul Mannina while he was incarcerated." *Id.* at 2. The Notice of Claim also identified claims that "the District of Columbia has engaged in a pattern and practice

11

of failing [to] appropriately assess, monitor, segregate and supervise inmates and detainees, including pretrial detainees, who present medical and mental health risks." *Id*.

The District cannot credibly argue that Ms. Mannina's well-plead Notice of Claim did not give it notice that "future litigation was reasonably foreseeable." *Gerlich,* 711 F.3d at 171. Thus, the Court finds that the District's duty to preserve began upon its receipt of Ms. Mannina's Notice of Claim, which was sent on August 1, 2013.[6]

The MPD Fugitive Unit file and the Pye Video were both destroyed after August 1, 2013. Both pieces of evidence were destroyed following a three-year retention period. *See* Def.'s Mem. at 17. The MPD Fugitive Unit file accompanied Mr. Mannina's transfer, which occurred on June 12, 2013. *Id.* at 8. The Pye Video was recorded on June 18, 2013. *See* Def.'s Mem., Ex. 9 (Synopsis of Interview with Hassen Pye) at 3, ECF No. 101-10. Thus, the evidence was likely destroyed after June 2016, well after the duty to preserve began.

*B. The District's Duty to Preserve Extends to Evidence Possessed by MPD*

The District contends that its duty to preserve did not extend to MPD[7] because "Plaintiff's first two complaints in this action contained nothing to put the District on notice that

---

[6] One could plausibly argue that the District's duty to preserve began even earlier, such as at the time of Mr. Mannina's death, or when the District initiated an internal investigation into Mr. Mannina and other inmates' suicides. *See Estate of Gaither v. District of Columbia,* 2013 WL 12320339, 03-cv-1458 (CKK), at *3 (D.D.C. Jan. 9, 2013) (duty to preserve began when decedent was stabbed as "litigation would likely arise as a result of the incident"); *Gerlich,* 711 F.3d at 171 (duty to preserve may also begin with a reasonably foreseeable internal department investigation). Yet, while the underlying incident or the District's internal investigation may have provided notice of an *injury*, the Notice of Claim specified the alleged *negligence*. By clarifying Ms. Mannina's cause of action, the Notice of Claim also clarified the scope of relevant evidence, and is therefore the more appropriate trigger.

[7] The parties also dispute whether the District's duty to preserve extends to the Mayor's Office, the D.C. Council, DBH, Pathways to Housing, and Saint Elizabeth's Hospital. *See* 1/30/19 Hr'g Tr. at 24:25–24:15, ECF No. 112 (the District asserting no duty to preserve as to the Mayor's Office or the D.C. Council); 1/30/19 Hr'g Tr. at 21:20–21, 23:20–23, ECF No. 112 (the District asserting no duty to preserve as to DBH, Pathways to Housing, and Saint

12

Plaintiff believed that MPD's actions were either negligent or constitutionally deficient." Def.'s Mem. at 7. That position construes the duty to preserve too narrowly. The District has a duty to preserve "what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discover, and/or is the subject of a pending discovery request." *Mahaffey,* 898 F. Supp. 2d at 60 (citing *Arista Records, Inc., v. Sakfield Holding Co.,* 314 F. Supp. 2d 27, 33 n.3 (D.D.C. 2004)). Evidence is "relevant" when it bears on the "claims or defenses of *any* party." *Zubulake IV,* 220 F.R.D. at 218 (emphasis in original). Thus, the issue is not whether the District had evidence of MPD's negligence, but whether the District through MPD had evidence of any party's negligence or due care, including DOC or Mr. Mannina himself. Given that Mr. Mannina passed through MPD custody in the time between his arrest and his death, the District should have anticipated that MPD might possess records relevant to this litigation.

Relevance does not turn on whether evidence is "favorable" to Ms. Mannina's claims. Such an inquiry is only necessary when determining the appropriate sanction—not when determining whether a duty was breached. *See, e.g., Mahaffey,* 898 F. Supp. 2d at 62 (adverse inference instruction may be awarded where spoliated evidence was "relevant to the moving party's claims or defenses") (citing *Chen,* 839 F. Supp. 2d at 14); *Zubulake IV,* 220 F.R.D. at 221 ("In order to receive an adverse inference instruction, Zubulake must demonstrate not only UBS destroyed relevant evidence as that term is ordinarily understood, but also that the destroyed evidence would have been favorable to her."). The spoliated evidence must be favorable in order to award sanctions, because the court must determine the injury and fashion a sanction that

---

Elizabeth's Hospital). Because the Court does not find that those other entities destroyed relevant evidence, the Court does not address whether those other entities are subject to the District's duty to preserve.

remedies the prejudice. *Shepherd,* 62 F.3d at 1479 ("We agree with the First Circuit that the district court must properly 'calibrate the scales' to ensure that the gravity of an inherent power sanction corresponds to the misconduct."). The spoliated evidence need not be favorable in order to find a breach, because the duty to preserve is owed to the Court, and not to an adverse party. *Victor Stanley,* 269 F.R.D. at 525–26 ("The court's inherent authority to impose sanctions for spoliation of evidence is a means of preserving 'the integrity of the judicial process' so that litigants do not lose 'confidence that the process works to uncover the truth.'") (citing *Silvestri v. Gen. Motors. Corp.,* 271 F.3d 583, 590 (4th Cir. 2001)).

Both the MPD Fugitive Unit file and Pye Video are potentially relevant to Ms. Mannina's claims. The MPD Fugitive Unit file is created as part of the District's practice or procedure when transferring a prisoner from another jurisdiction, and its contents are potentially relevant to Ms. Mannina's claim that District employees negligently failed to document, assess, or respond to Mr. Mannina's risk for suicide. *See* Def.'s Mem. at 9 (describing the Fugitive Unit file). The Fugitive Unit file also includes the contact information for the detectives that issued Mr. Mannina's arrest warrant. *Id.* The Pye Video is also clearly relevant, as it is the only eyewitness account relating to Mr. Mannina's suicide and describes Mr. Mannina's behavior leading up to the incident. *Id.* at 16. Therefore, those records should have been preserved.

    C. *The District's Spoliation was Negligent*

A party may have a 'culpable state of mind' that would support a finding of potentially sanctionable spoliation even if the party did not act in bad faith or purposefully destroy records. *Mahaffey*, 289 F. Supp. 2d at 61; *see also Vasser v. Shulkin*, 14-cv-185 (RC), 2017 WL 5634860, at *6 (D.D.C. Nov. 22, 2017). Mere negligence may suffice to impose sanctions such as an adverse evidentiary inference. *See Mahaffey,* 289 F. Supp. 2d at 61. Ms. Mannina asserts that

the District failed to meet its legal and ethical duty to preserve records, and alternates between characterizing that failure as negligent, grossly negligent, or willful misconduct. *See* Pl.'s Mem. at 1 (describing both negligent and willful misconduct); *id.* at 12 (describing the District's preservation as "grossly negligent"); Pl.'s Reply at 6 (applying negligence standard); Pl.'s Reply at 13 (describing the District's spoliation as "willful").

Ms. Mannina particularly faults the District for its failure to issue litigation hold letters until well into litigation. Pl.'s Reply at 5–7. The District responds that "[Ms. Mannina] has not shown that the District intentionally destroyed this evidence in bad faith or due to gross negligence." Def.'s Mem. at 14 (citing *Chen*, 839 F. Supp. 2d at 15). The District also asserts that it requested and preserved relevant documents at the outset of litigation, obviating the need for a litigation hold. *Id.* at 8.

The District's failure to issue a formal litigation hold does not necessarily render its failure to preserve records sanctionable. Parties may determine how best to meet their preservation duties, based on the scope of the lawsuit and the sources of relevant evidence. *See Zubulake V,* 229 F.R.D. at 432 (counsel may need to be "creative" "given the size of a company or the scope of a lawsuit"); *Haynes v. Dart,* No. 08 C 4834, 2010 WL 140387, at *4 (N.D. Ill. Jan. 11, 2010) ("The failure to institute a document retention policy, in the form of a litigation hold, is relevant to the court's consideration, but it is not *per se* evidence of sanctionable conduct.") (citation omitted). The Court looks to the entirety of the District's preservation efforts, without treating any single step as dispositive.

Here, the District seems to have determined that, rather than issuing litigation holds to its agencies, it was preferable to issue a document request to MPD, and then retain copies of MPD's records. Such an approach may have been reasonable, as there is no duty to preserve identical

copies of evidence. *See Shepherd,* 62 F.3d at 1481 (no authority that a party "had a duty to keep searching for additional copies or the original" as long as one copy is preserved); *Zubulake IV,* 220 F.R.D. at 218 (duty to preserve does not extend to "multiple identical copies"). A hold letter would only be necessary if MPD was likely to create new, relevant evidence after the document request was issued. Ms. Mannina, however, does not point to any evidence created after the document request letter. Nor does Ms. Mannina show that MPD was likely to create new, relevant evidence after August 1, 2013. Thus, the District's decision to have OAG retain copies of MPD's files, rather than have OAG issue and monitor a litigation hold at MPD, may have been reasonable.

The problem is that the District issued its document request more than three years late. This failure can only be explained by negligence. *Chen,* 839 F. Supp. 2d at 14 (only negligence could explain spoliation "in the absence of any other explanation"). Further, because there is not even a plausible excuse for the District's three-year delay, Ms. Mannina has established negligence by clear and convincing evidence. *Id.* at 17 (evidence of negligence is clear and convincing where spoliator "presented no defense of its actions except its claim that the loss of evidence was not deliberate").

The District does not argue that the destruction was unavoidable. *See Mahaffey,* 898 F. Supp. 2d at 62 (no negligence where "there is no indication that [destruction] was anything other than an unfortunate accident"); *Zubulake IV,* 220 F.R.D. at 220 (destruction caused by an office fire might not give rise to spoliation). Nor does the District argue that issuing a document request in 2013 would have been unduly burdensome. *See Zubulake V,* 229 F.R.D. at 433 ("Above all, the requirement [to ensure continued preservation] must be reasonable."); *Victor Stanley, Inc.,* 269 F.R.D. at 525 ("Breach of the preservation duty, also, is premised on

16

reasonableness."). The District's only argument—that it can reconstruct much of the missing evidence after the fact—goes to harm and not whether the District exercised due care.

The record does not indicate, however, that the District's spoliation was willful or in bad faith, even by a preponderance of the evidence. Ms. Mannina has proved that the District failed to preserve evidence, but has not proved *why* the District failed to preserve evidence. For example, there is no evidence that the District intended to hide or alter evidence in this case. *See Victor Stanley, Inc.,* 269 F.R.D. at 531 (bad faith spoliation where "Defendants deleted thousands of files and ran programs to ensure their permanent loss immediately following preservation requests and orders, and immediately before scheduled discovery efforts"). Rather, the available facts indicate that the MPD evidence was destroyed pursuant to routine policies. *See* Def.'s Mem. at 10. Thus, the Court finds that the District's spoliation was negligent, by clear and convincing evidence.

**IV. The Court Requires Further Briefing to Determine the Sanctions, If Any, That Are Appropriate**

The District failed to take reasonable steps to preserve the Pye Video and MPD Fugitive Unit file, and thus may be sanctioned for the spoliation of that evidence. *Mahaffey,* 898 F. Supp. 2d at 58 ("A party that fails to preserve evidence runs the risk of being justly accused of spoliation.") (citing *Chen,* 839 F. Supp. 2d at 12). It remains to be seen what remedies, if any, are appropriate. The Court requires further briefing on this point.

In briefing the remedies issue, the parties shall identify any destroyed evidence (including the MPD Fugitive Unit file and Pye Video already discussed), the prejudice caused to Ms.

Mannina by the destruction of that evidence, and whether sanctions shall be awarded under the Court's inherent power, Rule 37, or some combination thereof.[8]

The Court declines to order the District to issue litigation holds at this late stage of the case. As described above, a litigation hold is unnecessary if the District already possesses and will retain a copy of the relevant evidence. The District is free to decide the most efficient way to meet its preservation duties. Further, Ms. Mannina has not shown that any agency or contractor possesses evidence that the District has not already copied. Nor has Ms. Mannina shown that any agency or contractor is likely to create new, relevant information that should be protected by a litigation hold.

The Court also declines to order further discovery on the scope of spoliation at this time. Without some showing that other relevant evidence was destroyed—such as references to a missing document, or witness testimony regarding a missing document—further discovery into the scope of any alleged spoliation would be a mere fishing expedition. *See, e.g., Hubbard v. Potter,* 247 F.R.D. 27, 29 (D.D.C. 2008) ("Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the document that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed.") (citing *Zubulake v. UBS Warburg LLC* ("*Zubulake III*"), 217 F.R.D. 309, 313 (S.D.N.Y. 2003).

---

[8] The Court raises this point because the source of authority may determine what sanctions are available. Specifically, because the Court has found that Ms. Mannina has shown spoliation by clear and convincing evidence, penal sanctions may be available pursuant to the Court's inherent authority. *Shepherd*, 62 F.3d at 1478. At the same time, because the Court has not found intentional or willful spoliation, penal sanctions may be barred pursuant to Rule 37. Fed. R. Civ. P. 37(e).

## CONCLUSION

For the foregoing reasons, the Court finds that the District has failed to preserve evidence in this action and is responsible for actual spoliation of evidence. The parties shall meet and confer and submit a proposed schedule for briefing on the issue of prejudice, consistent with the instructions in this Opinion, within fourteen days of the issuance of this opinion.

Dated: February 4, 2020

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE