UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTORIA MANNINA,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | Case No. 1:15-cv-931-FYP-RMM |

**MEMORANDUM OPINION AND ORDER**

The parties in this civil rights and tort case have conducted extensive discovery since 2016, and several discovery disputes have arisen during that period. Pending before the Court is Plaintiff Victoria Mannina's ("Ms. Mannina") Motion for Leave to Take Additional Depositions, ECF No. 168, in which she asks the Court to amend the Scheduling Order to allow her to take additional nonparty depositions and requests a status conference to address the remaining discovery issues. The Motion also seeks leave to propound unlimited requests for admission, but Ms. Mannina has since withdrawn that request. Defendant the District of Columbia ("the District") opposes this motion and argues that the prospective depositions would be unreasonably cumulative and duplicative. Upon consideration of the parties' submissions,[1] the record, and

---

[1] The relevant pleadings and briefs include: Initial Scheduling Order, ECF No. 23; Second Amended Complaint ("2d Am. Compl."), ECF No. 33; Deposition Summary Chart ("Dep. Summary Chart"), ECF No. 127-1; Pl.'s Mot. for Leave to Take Additional Depositions ("Mot."), ECF No. 168; Mem. In Support of Pl.'s Mot. for Leave to Take Additional Depositions ("Mem."), ECF No. 168-1; Def.'s Opp'n to Pl.'s Mot. for Leave to Take Additional Depositions ("Opp'n"), ECF No. 178; Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Leave to Take Additional Depositions ("Reply"), ECF No. 180.

Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is asterisked (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

relevant legal authority, the Court **GRANTS IN PART AND DENIES IN PART** Ms. Mannina's motion for additional depositions and **DENIES AS MOOT** her request for unlimited requests for admission, for the reasons discussed below.

## BACKGROUND

This case arises from Paul Mannina's ("Mr. Mannina") death by suicide, which occurred in June 2013 while he was in the custody of the District's Department of Corrections ("DOC"). Ms. Mannina has brought this action as widow and representative of Mr. Mannina's estate, raising civil rights claims under 42 U.S.C. § 1983 and the Due Process clause of the Fifth Amendment, and tort claims including negligence and wrongful death. *See* 2d Am. Compl. ¶¶ 1, 36–54. Several of these claims rest on the premise that the District failed to adequately respond to or mitigate the risk that Mr. Mannina would attempt suicide, and Ms. Mannina also faults the District for giving Mr. Mannina access to the razor used for the suicide. *Id*. ¶¶ 28–32.

The Court entered an initial Scheduling Order in this case on November 10, 2016, outlining, *inter alia*, limits on discovery. Specifically, the Court allowed each party to conduct ten nonparty, nonexpert depositions and to propound fifteen requests for admission. *See* Scheduling Order at 1–2. Judge Ketanji Brown Jackson then referred this matter to the undersigned for management of discovery. *See* Oct. 27, 2017 Min. Order. The parties have since raised numerous discovery disputes, and the undersigned has held hearings and issued several orders and memorandum opinions to resolve these issues.

The instant dispute concerns Ms. Mannina's desire to depose additional witnesses and remove the limit on requests for admission. The parties previewed this dispute in a series of status reports. The first status report requested a hearing to discuss outstanding discovery issues, and Ms. Mannina noted an anticipated need for additional requests for production, requests for

admission, and depositions. *See* Joint Status Report, ECF No. 160. The Court ordered Ms. Mannina to submit a supplemental status report to clarify if she intended to exceed the limits on depositions outlined in the initial Scheduling Order and, if so, identify the number of additional depositions requested. *See* Apr. 21, 2021 Min. Order. Ms. Mannina then filed her Supplemental Status Report which listed proposed nonparty deponents, described how their depositions would bolster her claims, and sought additional written discovery. *See* Supplemental Status Report, ECF No. 162. The District responded that it opposed any modifications to the scope of discovery. *See* Response re Status Report, ECF No. 167. The Court held a hearing on June 8, 2021 to discuss the issues raised in the parties' status reports. *See* June 8, 2021 Min. Entry. At that hearing, Ms. Mannina proposed that the Court bifurcate the dispute and independently determine whether to permit depositions of three witnesses—Joseph Pettiford ("Mr. Pettiford") and Orlando Harper ("Mr. Harper"), former Deputy Wardens, and Dr. Vail Zabiheian ("Dr. Zabiheian"), an employee of the contractor that provides health care at the jail—and, after those witnesses were deposed, then allow the parties to address the need for further depositions. *See* June 23, 2021 Min. Order. The Court permitted the depositions of Mr. Pettiford and Mr. Harper but deferred on the request to depose Dr. Zabiheian. *Id*.

Ms. Mannina then filed the instant motion and supporting memorandum on June 17, 2021. *See* Mot.; Mem. On June 23, 2021, the Court entered a minute order allowing Ms. Mannina to depose Mr. Pettiford and Mr. Harper, and deferring consideration of the other issues raised at the hearing and in the Motion. *See* June 23, 2021 Min. Order. The District then filed multiple motions to extend the deadline for its opposition brief until after Ms. Mannina deposed Mr. Pettiford and Mr. Harper. *See* ECF Nos. 171, 174, 175, 177. Ms. Mannina completed the depositions for Mr. Pettiford and Mr. Harper by October 14, 2021. The District subsequently

filed its opposition brief and Ms. Mannina then filed her Reply.  *See* Opp'n; Reply.  The motion is now ripe for review.

## LEGAL STANDARD

### I.     Motion for Leave to Take Additional Depositions

Federal Rule of Civil Procedure 30(a)(2) requires the Court to grant leave to a party seeking more than ten depositions, unless the opposing party consents, "to the extent consistent with Rule 26(b)(1) and (b)(2)."  Fed. R. Civ. P. 30(a)(2).  Under Rule 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2) requires the court to limit the frequency or extent of discovery if (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

### II.    Motion to Modify Scheduling Order

Federal Rule of Civil Procedure 16(b) provides that "[a] schedul[ing order] may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The primary factor in determining whether good cause exists is the diligence of the party[.]"  *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 292 F.R.D. 142, 144 (D.D.C. 2013).  Diligence "focuses on the timeliness" of the requested amendment.  *Lurie v. Mid-Atl. Permanente Med.*

*Grp., P.C.*, 589 F. Supp. 2d 21, 23 (D.D.C. 2008) (internal quotations omitted). In addition, a court may consider other factors including:

> (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that the discovery will lead to relevant evidence.

*Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012) (citing *Childers v. Slater*, 197 F.R.D. 185, 188 (D.D.C. 2000); *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987); *Vineberg v. Bissonnette*, 548 F.3d 50, 55 (1st Cir. 2008)).

## DISCUSSION

### I.     The Parties' Dispute Regarding the Classification and Number of Depositions

Ms. Mannina's request to conduct additional nonparty depositions raises several interrelated issues. The parties disagree about which District employees' depositions should be classified as party depositions, and whether Ms. Mannina should be allowed to depose four additional nonparty witnesses. *See* Mem. at 3–6; Opp'n at 4–9; Reply at 3–6. Ms. Mannina contends that all current District employee witnesses' depositions are party depositions, whereas the District contends that only high-level employees or employees designated as 30(b)(6) witnesses count as parties for this purpose. The four deponents Ms. Mannina now requests to depose do not appear to fit either side's definition of a party deponent, as they are not current District employees. Nonetheless, the parties' dispute about the definition of party deponents is relevant to determining whether the District properly classified the previously conducted depositions of District employees as nonparty depositions that count towards the Scheduling Order's cap of ten nonparty depositions. As that issue may affect whether Ms. Mannina needs leave to conduct the four proposed depositions, the Court will first determine (1) as a general

5

matter, whether all current District employees are parties whose depositions do not count towards the ten nonparty deposition limit; and then address (2) whether good cause exists to modify the scheduling order; and (3) whether Ms. Mannina is entitled to additional nonparty depositions under Rule 30(a)(2).

### A. Not Every Deposition of Current District Employees Qualifies as a Party Deposition.

The District argues that, as a municipal corporation, current employees who are not officers, directors, managing agents, or individuals designated to testify on the District's behalf under Rule 30(b)(6) should be treated as nonparty witnesses whose depositions count toward the ten nonparty deposition limit. *See* Opp'n at 4–5. Ms. Mannina contends that depositions of current District employees all should be treated as party depositions. *See* Reply 1–5.

The District's analysis is correct. As a general rule, not every deposition of a corporate entity's current employee is a party deposition. The "examining party bears the burden of establishing the status of the witness" as a party or nonparty. *Schindler Elevator Corp. v. Otis Elevator Co.*, No. 6-5377, 2007 WL 1771509, at *3 (S.D.N.Y. June 18, 2007) (citing *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985)). This distinction often arises when courts must determine whether a deponent is a party who can be deposed by simple notice or whether the party seeking the deposition must comply with Rule 45's requirements for nonparty depositions by issuing a subpoena.[2] Current corporate employees "who [do] not qualify as an officer, director, or managing agent [are] not subject to deposition by

---

[2] This issue also arises in the context of Rule 32(a)(3), which allows party depositions to be used "for any purpose." Fed. R. Civ. P. 32(a)(3); *see generally also* 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2103 (3d ed. 2021) (discussing significance of a deponent's status as corporate officer, director, or managing agent as opposed to subordinate employees).

notice. Rather, the employee is treated as any other non-party; before being compelled to testify, he or she must be served with a subpoena pursuant to Federal Rule of Civil Procedure 45." *Karakis v. Foreva Jens Inc.*, No. 08-61470, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009) (collecting authorities); *see also Schindler Elevator*, 2007 WL 1771509, at *2; *GTE Prods. Corp. v. Gee*, 115 F.R.D. 67, 69 (D. Mass. 1987). Similarly, past corporate employees are nonparty deponents. *See Boss Mfg. Co. v. Hugo Boss AG*, No. 97-CIV-8495, 1999 WL 20828, at *2 (S.D.N.Y. Jan. 13, 1999).

Given that the District is a "municipal corporation," D.C. Code § 1-102, these rules apply to it with equal force. Thus, current District employees who are officers, directors, or managing agents, and any employee the District designates as a 30(b)(6) deponent, count as parties for purposes of classifying their depositions. Other current employees and all past employees are nonparties whose depositions count towards the Scheduling Order's cap and must be served in accordance with Rule 45.

Ms. Mannina correctly points out that Rule 30 does not require a court to find that only the depositions of 30(b)(6) designees count as party depositions, *see* Reply at 4–5, but this is not the District's position. She appears to be responding to a position the District took at a May 2018 hearing, at which the District advocated a narrower definition of party depositions, asserting that only depositions of 30(b)(6) designees should count as a party deposition. *See* Reply at 4 (quoting hearing transcript). The District has since abandoned that position and now asserts that employees who are officers, directors, managing agents, or 30(b)(6) corporate designees should be treated as parties. *See* Opp'n at 4. This more nuanced argument is in line with precedent, including two of the cases cited by the District. *See* Opp'n at 5; *Schindler*, 2007 WL 1771509, at *2; *GTE*, 115 F.R.D. at 69.

7

The Court lacks sufficient information about the employment status of prior deponents to ascertain how many were current employees who should be treated as parties or nonparties. In addition, the Court previously assumed, without deciding, that Mr. Pettiford and Mr. Harper were nonparties whose depositions would exceed the limits outlined in the initial Scheduling Order, permitting those depositions only after finding good cause. *See* June 23, 2021 Min. Order. The Court now clarifies that both depositions were nonparty depositions because Mr. Harper and Mr. Pettiford were former District employees when their depositions were noticed. To the extent that the parties have any further disputes about classifying past deponents as parties or nonparties, they should confer and then present any outstanding dispute to the Court in accordance with the procedures set forth in the Scheduling Order.

### B.  Ms. Mannina Is Permitted to Take One Additional Nonparty Deposition.

Because Ms. Mannina may have expended the depositions to which she was entitled under the Federal Rules and the Court's Scheduling Order, Ms. Mannina must satisfy the requirements of both Rules 16(b) and 30(a)(2) to prevail on her request for additional depositions.[3] Although neither party briefed Rule 16(b)'s good cause standard, the Court must address that issue because granting Ms. Mannina's motion would require amending the Scheduling Order. Only if Ms. Mannina clears Rule 16 can the Court consider whether she

---

[3] If Ms. Mannina has only taken six nonparty depositions to date, the existing Scheduling Order likely provides the requisite leave for her to take four additional nonparty depositions without a further court order. However, as noted above, the Court lacks sufficient information to calculate the number of nonparty depositions Ms. Mannina has taken to date.

satisfies Rule 30(a)(2), because the proposed discovery would exceed Rule 30's default limit of ten depositions per side.

### 1. Ms. Mannina Satisfies Rule 16's Good Cause Standard.

A scheduling order may only be modified upon a showing of good cause, the "primary factor" of which is "the diligence of the party" seeking modification. *Love of Food I*, 292 F.R.D. at 144. Ms. Mannina has demonstrated diligence in obtaining the requested nonparty depositions, by raising the possibility of needing additional deposition at various phases of this litigation including at a status conference in May 2018. *See* Reply at 3–4. Ms. Mannina also attempted to work with the District to resolve discovery issues for over a month after the stay on discovery was lifted, although the parties reached an impasse. *See* Mem. at 7. Ms. Mannina clearly believes that she needs additional discovery to prove her claims, and the topics she proposes to explore at the depositions clear the low bar of relevance as they pertain to razors and suicide prevention measures. The District's opposition to the motion does not override the other good cause factors set forth in cases such as *Watt*, 840 F. Supp. 2d at 326. Ms. Mannina has therefore satisfied Rule 16(b).

### 2. Ms. Mannina Satisfies Rule 30(a) With Respect to One Proposed Deposition.

Having satisfied Rule 16(b), Ms. Mannina must next demonstrate that she satisfies Rule 30(a)(2), which imports the standards found in Rule 26(b)(1) and (b)(2). Rule 26(b)(1) allows discovery of "any nonprivileged matter that is *relevant* to any party's claim or defense *and proportional* to the needs of the case," considering the six proportionality factors. Fed. R. Civ. P. 26(b)(1) (emphasis added). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also*

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). Rule 26(b)(2) requires the court to limit the frequency or extent of discovery if (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). If the movant establishes relevance and proportionality, then the burden shifts to the party opposing discovery to make a specific, detailed showing as to why discovery should not be permitted. *See Oxbow v. Carbon & Minerals LLC v. Union Pacific R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017); *E.E.O.C. v. George Washington Univ.*, No. 17-cv-1978, 2020 WL 3489478, at *4 (D.D.C. June 26, 2020) (quoting *U.S. v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 33 (D.D.C. 2012)).

Ms. Mannina seeks leave to conduct four new depositions, of Former Warden Gregory Futch ("Warden Futch"), Dr. Zabiheian, Elspeth Ritche ("Ms. Ritchie"), and Lisa Bullock ("Ms. Bullock").[4] She argues that the depositions will lead to relevant information and be proportional to the needs of the case. Specifically, she contends that the depositions may provide information about the proliferation of razors at the DC Jail and whether DOC policies included adequate safeguards to protect detainees who were suicidal or otherwise at risk. *See* Reply at 5–6. Ms. Mannina also hopes these deponents will "have knowledge of the conduct of policy makers who recklessly disregarded risks to Mr. Mannina and others like him[,] or could support and explain

---

[4] The Court has already ruled on the portion of the June 17, 2021 motion that proposes deposing Mr. Pettiford and Mr. Harper. *See* Mem. at 3–5; June 23, 2021 Min. Order (granting Ms. Mannina's request to depose Mr. Pettiford and Mr. Harper). Ms. Mannina has since deposed both parties. *See* Opp'n at 3 (noting that Mr. Pettiford and Mr. Harper had been deposed as of October 14, 2021).

10

documents [she has] already acquired to establish the facts that demonstrate that indifference." Reply at 5. She believes she has already discovered facts that establish the District's negligence; her request is aimed at obtaining additional testimony to prove that the District's alleged indifference extended past Mr. Mannina's suicide and so constituted a policy or practice. *See id.* at 6. The District asserts that the proposed depositions are cumulative and duplicative, any additional information can be obtained through document requests or third-party subpoenas, and Ms. Mannina has had more than five years to obtain the requested information. *See* Opp'n at 6.

Five proportionality factors apply uniformly apply to all four of Ms. Mannina's requests—(1) the importance of the issues at stake in this action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, and (5) whether the burden or expense of the proposed discovery outweighs its likely benefit.

First, Ms. Mannina alleges serious constitutional violations in this case and asserts that Mr. Mannina would not have died by suicide absent the DC Jail's negligence and inadequate razor blade policy. Issues such as these have an "importance far beyond the monetary amount involved." Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments. Ensuring the safety of individuals in custody is a matter of immense importance, so this factor weighs in favor of allowing additional depositions.

Second, the amount in controversy in this case is significant. Ms. Mannina requests an award of $8,500,000 for the damages to Mr. Mannina, along with "punitive damages, costs of suit, including reasonable attorneys' fees allowed under 42 U.S.C. § 1988, and pre-judgment and post-judgment interest." 2d Am. Compl. at 12. This factor does not weigh in either party's favor, and "must be compared with the estimated cost of discovery to determine the proposed

11

discovery's proportionality." *Lamaute v. Power*, 339 F.R.D. 29, 35–36 (D.D.C. 2021) (citing *Oxbow*, 322. F.R.D. at 7–8).

Third, the parties' relative access to relevant materials weighs in favor of Ms. Mannina. The District, to the extent that relevant information exists, has much more access to the materials needed to prove Ms. Mannina's claims. Thus, "the burden of responding to discovery lies heavier" on the District, Fed. R. Civ. P. 26 advisory committee notes to 2015 amendments, and this factor weighs in favor of allowing the additional depositions.

Finally, the Court must consider both the parties' resources and the burdens and expenses associated with allowing additional depositions. The resource factor "must be considered along with the burden or expense of producing the requested discovery." *Lamaute*, 339 F.R.D. at 36 (citing *George Washington Univ.*, 2020 WL 3489478, at *5). "[C]onsideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party." *George Washington Univ.*, 2020 WL 3489478, at *5 (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendments).

Here, the District's resources are more limited than Ms. Mannina describes, yet the burden and expense of allowing additional depositions do not seem to outweigh their benefit. Ms. Mannina asserts that the District has a "large phalanx of lawyers," Mem. at 7, but the District notes that only two attorneys are assigned to this case. *See* Opp'n at 10. The District further argues that "[b]oth Parties have already been overtaxed by the burden of excessive, often unnecessary discovery" and "[n]either Plaintiff's alleged lack of resources, nor the District's current financial circumstances, justify further unnecessary work by either side." *Id.* The District's lean staffing on this case shows that its resources are limited. And it is clear to the Court that Ms. Mannina is not without her own resources, having taken seventeen depositions

12

thus far over the past seven years of litigation. Nevertheless, in similar cases, courts have found the resource factor weighed in favor of granting a discovery request when the refusing party has not objected based on an inability to pay. *See, e.g.*, *Oxbow*, 322 F.R.D. at 8 (finding "no reason to deny" defendant's discovery request when the plaintiff explicitly did not object based on an inability to pay). The burdens and expenses associated with allowing additional discovery, at this point in the litigation, do not outweigh the potential benefit. Thus, these factors together weigh in favor of allowing depositions.

The above proportionality factors weigh in Ms. Mannina's favor, but discovery must be proportional, relevant, *and* satisfy Rule 26(b)'s other requirements. The Court will now consider the final proportionality factor—the importance of discovery in resolving the issues in this case—in relation to the relevance of the information sought from each proposed deponent.

      a.    Former Warden Gregory Futch

Ms. Mannina seeks to depose Warden Futch, asserting that, as "the most senior official at the DC Jail, what Warden Futch subjectively knew with respect to the razor blade policy is highly relevant." Reply at 5. She believes Warden Futch's order to collect all razors from people detained at the jail and any previous razor blade orders may help determine "the degree of care or indifference the officers of the DC Jail exercised toward its detainees who were at risk." *Id*. Relatedly, Ms. Mannina would like to know whether Warden Futch received Mr. Pettiford's proposed razor blade policy from 2011. *See* Mem. at 4–5. The District asserts that testimony from Warden Futch would be duplicative and cumulative because Ms. Mannina has already deposed five individuals about the razor blade policy, including Mr. Pettiford and Mr. Harper.[5]

---

[5] Ms. Mannina has asked questions about the razor blade policy of five previous deponents: Ben Collins, Director of the Department of Corrections Office of Investigative

13

*See* Opp'n at 6 (citing Dep. Summary Chart).  Further, the District states that it has "produced thousands of documents from an email search which included Futch and several other DOC senior officials' emails."  *Id.* at 7.

Although there already has been extensive discovery on this issue, the Court will grant Ms. Mannina leave to depose Warden Futch.  Individuals' access to razor blades while detained and DC Jail's razor blade policy are central issues in Ms. Mannina's theory of the case.  Warden Futch may have relevant, subjective knowledge because he was the DC Jail's former warden.  The Court allowed Ms. Mannina to depose Mr. Pettiford and Mr. Harper so that she could explore the issue, but their lapses in memory appear to have made their depositions unfruitful.  *See* Reply at 2.  Having already found that further depositions were appropriate on this topic, the Court will allow Ms. Mannina to depose Warden Futch as well.

  b.  Dr. Vail Zabiheian

Ms. Mannina also seeks to depose Dr. Zabiheian, a contract employee for Unity Health Care, because he allegedly complained about running out of containers to collect razor blades.  *See* Mem. at 5.  Ms. Mannina believes Dr. Zabiheian's complaint might imply that, at the time of Mr. Mannina's death, the distribution of razor blades was "rampant and uncontrolled."  *Id.*  She hopes Dr. Zabiheian will "testify whether the request for containers was normal or extreme, thereby demonstrating that the DC Jail was awash in razors."  Reply at 5.  The District asserts that Ms. Mannina "wrongly assumes Dr. Zabiheian's complaint about [correctional officers] taking the medical unit's supplies is an admission that correctional officers found numerous contraband razors."  Opp'n at 7.  The District further argues that there is no reason to believe Dr.

---

Services; Sharon Cain Smith, Major in Charge of Operations; Wanda Patton, Interim Deputy Director of Operations; Mr. Pettiford; and Mr. Harper.  *See* Opp'n at 6.

Zabiheian would have independent personal knowledge regarding the distribution of razor blades by DOC staff. *See id.* at 7–8.

Ms. Mannina has not demonstrated that deposing Dr. Zabiheian would produce information proportional to her claims. The connection between Dr. Zabiheian's complaint and the theories Ms. Mannina hopes to prove is too tenuous. It is speculative to assume that Dr. Zabiheian's perceived shortage of containers means there was a surplus of razors accessible to detainees. The burden of allowing an additional deposition based on this theory is disproportional to the potential relevance of Dr. Zabiheian's testimony. Thus, the Court denies Ms. Mannina's request to depose Dr. Zabiheian.

        c.   <u>Ms. Ritchie and Ms. Bullock</u>

Finally, Ms. Mannina seeks to depose Ms. Ritchie and Ms. Bullock—two former senior DC Jail officials and attendees of the July 2013 Suicide Prevention Task Force Meeting. Ms. Mannina believes these individuals "may have knowledge of the policies and procedures for communicating information about detainees who have been identified as suicidal." Mem. at 5. Ms. Mannina asserts that she is entitled to this testimony because she has been unable to question any of the attendees about their comments during the meeting and has been unable to depose members of the Department of Behavioral Health. *See id.* The meeting minutes from the Suicide Prevention Task Force Meeting allegedly include "analysis of the failure of the District to communicate to the DC Jail regarding suicidal detainees" and this communication issue "goes to the heart of [her] constitutional claim." Reply at 6. The District challenges this request because Ms. Mannina has had access to these meeting minutes for years and has already used them to question three witnesses—Dr. Beth Mynett, Dr. Diana Lapp, and Wanda Patten. *See* Opp'n at 8; *see also* Dep. Summary Chart. Dr. Mynett was co-chair of the Task Force and

15

testified as a 30(b)(6) deponent, and Dr. Lapp and Ms. Patten were members of the Task Force. *See* Opp'n at 8.

While Ms. Mannina has shown that the proposed depositions may produce relevant information, the District has demonstrated that deposing Ms. Ritchie and Ms. Bullock would produce cumulative and duplicative testimony. Ms. Mannina has not articulated a reason to believe that Ms. Bullock and Ms. Ritchie would provide any new information that could not have been gleaned from previous depositions. Ms. Mannina deposed Dr. Mynett for four total days about the Task Force meeting and the DC Jail's suicide prevention policy. *See id.* Dr. Lapp and Ms. Patten were also questioned about the Task Force meeting. *See id.* at 9. Ms. Mannina's briefs do not discuss how these depositions would produce any non-cumulative information about the July 2013 Suicide Prevention Task Force Meeting. Thus, the Court will deny Ms. Mannina's request to depose Ms. Ritchie and Ms. Bullock.

In sum, Ms. Mannina has established that she should be granted leave to exceed the deposition limits in order to depose Warden Futch, but has not made that showing for Dr. Zabiheian, Ms. Ritchie, or Ms. Bullock. The District suggests that additional information regarding the topics Ms. Mannina wishes to explore with those witnesses may be obtained through means other than depositions, and the Court agrees. If Ms. Mannina has not served twenty-five requests for production, as outlined in the Scheduling Order, she may propound additional document requests—otherwise, she must request a modification of the Scheduling Order. *See* Opp'n at 6. Additionally, she may send third-party subpoenas to Unity Healthcare to obtain some of the information sought. *See id.*

### III.    Ms. Mannina's Request for Unlimited Requests for Admission Is Moot

Ms. Mannina's initial motion requested unlimited requests for admission "for the sole purpose of authenticating documents and evidence and limiting the facts that will be contested at

16

trial." Mem. at 7.  The District objected to unlimited requests for admission but offered to increase the limit from fifteen to twenty-five, although Ms. Mannina had not yet served any requests for admission at the time of filing her motion.  *See* Opp'n at 11–12.  The parties have since conferred, and Ms. Mannina has withdrawn this request because the District "has represented that it will agree that any document that it has produced is authentic."  Reply at 6. Thus, the Court denies as moot the portion of Ms. Mannina's motion that sought unlimited requests for admission.

## IV.     The Court Will Hold A Status Conference to Address Any Additional Discovery Issues

Finally, Ms. Mannina requests a status conference to resolve the remaining discovery issues because she "is anxious to conclude discovery and believes that the Court's assistance at this time could expedite the process."  Reply at 7.  The District did not have a chance to reply to this request because it was raised in a reply memorandum.  The Court hoped that the instant motion, along with the numerous status reports and responses submitted by both parties in advance of this motion, *see* ECF Nos. 157, 158, 159, 160, 162, 163, 167, would address all outstanding discovery issues in this case.  Nonetheless, a hearing is prudent given that there appear to be unresolved issues, and as the Court has not yet set a date for the close of discovery. Accordingly, the Court **ORDERS** the parties to submit a Joint Status Report apprising the Court of the outstanding discovery disputes to be discussed at the status conference, proposing dates on which both parties are available, and proposing a date for discovery to close.

## CONCLUSION AND ORDER

For the reasons stated above, Ms. Mannina's Motion for Leave to Take Additional Depositions is **GRANTED IN PART AND DENIED IN PART** with respect to her request for additional depositions and **DENIED AS MOOT** with respect to her request for unlimited

17

requests for admission.  It is further **ORDERED** that the parties shall submit a Joint Status Report within fourteen days of this opinion identifying any outstanding discovery issues, proposing dates for a status conference, and proposing a date for discovery to close.

### REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.2(b) of the United States District Court for the District of Columbia, any party who objects to the undersigned magistrate judge's ruling must file a written objection thereto within 14 days of the party's receipt of this Memorandum Opinion and Order.  The written objections must specifically designate the order or part thereof to which objection is made, and the basis for the objection.

Date: March 31, 2022

ROBIN M. MERIWEATHER  
UNITED STATES MAGISTRATE JUDGE